No. 70,186

STATE OF KANSAS, *Appellee*, v. ERIC D. SIMS, *Appellant.*

(887 P.2d 72)

Opinion filed December 16, 1994.

. *Benjamin C. Wood*, of Lawrence, argued the cause, and was on the brief for appellant.

*Gwynne E. Harris*, assistant district attorney, argued the cause, and *Joan M. Hamilton*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant appeals from his conviction and sentence, contending that the court erred (1) by refusing to modify his sentence based upon a recommendation from the Topeka Correctional Facility (TCF); (2) by not granting the defendant a hearing on his motion to modify; (3) by failing to enter on the record a finding of guilty; and (4) by admitting expert testimony at the sentencing hearing. We find no reversible error and affirm.

On August 26, 1992, Eric D. Sims was charged with 14 counts of aggravated criminal sodomy, 8 counts of indecent liberties with a child, 2 counts of sexual battery, and 3 counts of contributing

to a child's misconduct or deprivation. The charges arose from the defendant's conduct while a chapter advisor for DeMolay, a youth organization of the Masons.

At the defendant's scheduled arraignment on September 30, 1992, the State informed the court that under the terms of a plea agreement the defendant would plead guilty to seven counts of aggravated criminal sodomy, four counts of indecent liberties with a child, and two counts of sexual battery. In return, the State agreed to dismiss the remaining counts. There were no agreements concerning sentencing.

The court asked the defendant's counsel whether the plea agreement was correct. Counsel indicated that it was and stated that he had advised the defendant of his rights as well as the possible sentences for the crimes. The court asked the defendant if he understood the plea and all the terms of the plea agreement. After the court satisfied itself on the record that the defendant understood the agreement and that the defendant wished to enter pleas of guilty, the court further satisfied itself that the defendant was entering his pleas knowingly and voluntarily. The defendant then entered his pleas of guilty. A presentence investigation was ordered.

On December 10, 1992, the case came before a different judge of the district court for sentencing. There was an extended hearing before the court imposed sentence. The defendant called a total of six witnesses, including himself. The State called one witness.

The first witness called was the defendant's mother, Montoy Sims. Mrs. Sims testified that when the defendant was a child, she and his father would leave him with his grandfather every evening while they went out drinking at the Moose Lodge. She stated that the defendant's father was emotionally abusive toward him. Because of lack of space in the house, the defendant and his grandfather, who was living with the family, slept in the same bed for 14 years. Mrs. Sims testified that she realizes now that the defendant's grandfather was sexually abusing him.

The defendant testified that while growing up, his grandfather was his best friend and the biggest influence in his life. He tes-

tified that finally confronting what his grandfather had done to him caused him great pain and anguish, and that he now realizes that he caused similar pain to the adolescents with whom he was involved. The defendant stated that he loved the adolescents the only way he knew how and for that he was sorry.

The defendant testified that his grandfather had provided for most of the defendant's needs and purchased only "the best things" for him. According to the defendant, he tried to do the same for the boys in DeMolay, at times buying them $700 suits.

Dr. David George Hough testified on behalf of the defendant. Dr. Hough stated he was a general psychologist and he had done some work in forensic psychology dealing with sex offenders. According to Dr. Hough, the defendant suffers from several neuroses and desperately seeks comfort and love, sometimes in inappropriate ways. Dr. Hough diagnosed the defendant as suffering from pedophilia not restricted to incest. Dr. Hough was of the opinion that the defendant was a good candidate for treatment and that with a good, highly structured inpatient treatment program lasting years, the defendant had a better than average chance of coming out of the program with his pedophilia in check.

Dr. Hough indicated he was familiar with a program called Alpha House, which is an inpatient program for sex offenders located in Minneapolis, Minnesota. Alpha House would be the type of program Dr. Hough would recommend. Dr. Hough also stated that a treatment program would be a better solution than incarceration for the defendant.

Under cross-examination, Dr. Hough testified that at the time he conducted his examination, he only knew the general nature of the offenses with which the defendant had been charged. He stated that in his opinion, the defendant knows that his actions were legally wrong but feels that the law does not understand the nature of his love for the boys. According to Dr. Hough, although pedophilia is difficult to treat, the defendant demonstrates none of the warning signs that would indicate treatment would be unsuccessful.

Donald E. Troth, the presentence investigator who evaluated the defendant, recommended that the defendant be sent to Alpha

House. Troth stated that if the treatment did not work, prison was always an alternative later.

Jim L. Woodward, a social worker, also testified on behalf of the defendant. Woodward stated that he was not an expert in the treatment of sex offenders and he mainly worked with sexual abuse victims. In Woodward's opinion, the defendant was very sexually confused, but Woodward acknowledged that he was not psychopathically deviant. Woodward indicated that the defendant did have a distorted sense of right and wrong. He concluded that while a long jail sentence would help to keep society safe for a period of time, it would not help the defendant. He believed that the defendant was treatable.

Ronald Weil, the intake director for Alpha Human Services, was called as a witness by the defendant. Weil had interviewed the defendant to determine his suitability for the Alpha House program. Weil explained that the Alpha House program is a community-based program and that the defendant would live at the Alpha House and receive treatment for 18 months. The defendant would then live in the nearby community and continue to attend therapy at Alpha House for an additional 11 months.

Weil testified that Alpha House is very careful about who they accept in the program. He stated that approximately 50% of the persons accepted into the program fail to complete the program. Of the 50% that do complete the program, however, only 5% reoffend. According to Weil, Alpha House was in a position to accept the defendant. Weil felt that the defendant was a better than average treatment candidate. He testified that the payment for treatment would amount to approximately $2,100 per month.

The State then called Dr. Stephen M. Peterson, a psychiatrist at the Menninger Clinic specializing in forensic psychiatry. Dr. Peterson testified that he had worked on over 100 sex offender evaluations. He had reviewed police reports, investigative documents, the complaint, evaluations from doctors, and photographs the defendant had taken, as well as cards and letters which the defendant had written. He had not been able to interview the defendant directly. Without such an interview, Dr. Peterson stated that he could give only a provisional diagnosis. He felt that it was unethical to diagnose patients he had not seen.

The defendant's attorney objected to any further testimony from Dr. Peterson based on the fact that Dr. Peterson had not interviewed the defendant and could not ethically provide a diagnosis. The court stated that the argument went to the weight of the testimony, rather than its admissibility, and allowed the witness to continue.

In Dr. Peterson's opinion, the defendant sexually identifies himself as a pedophile in that he is only sexually interested in adolescent males. He felt that Dr. Hough's conclusions about the defendant were not valid because Dr. Hough did not do a complete sexual history on the defendant. He listed several factors which he felt showed the defendant's lack of treatability. The defendant's target choice, adolescent males, coupled with the fact that the defendant was not convinced that his conduct was wrong, were conditions that would make treatment difficult. Dr. Peterson also felt that the nature of the defendant's involvement with the boys in DeMolay, and his grooming of them to fit the image he liked, weighed against treatability.

Under cross-examination, Dr. Peterson testified that the defendant may be treatable but that treatment should be done while the defendant remains incarcerated. He admitted that his conclusion was only a prognosis and was incomplete because he did not have the opportunity to interview the defendant. Dr. Peterson also stated that he had talked to and read the report of Dr. David Dolittle concerning one of the victims in the case. The defendant objected to any testimony concerning Dr. Dolittle's report because he claimed such testimony would be hearsay. Neither the report nor the conversation with Dr. Dolittle were in evidence. However, the court overruled the objection.

At the conclusion of all the evidence, the district court sentenced the defendant to 10 years to life for each of the seven aggravated sodomy counts, to be served consecutively. On the four counts of indecent liberties, the court sentenced the defendant to 5-20 years on each count, to be served concurrent with the aggravated sodomy sentences. On the two counts of sexual battery, the district court sentenced the defendant to one year in the county jail on each count, to be served concurrent with the

other sentences. The defendant's controlling sentence was thus established at 70 years to life.

TCF evaluated the defendant. For its recommendation, the evaluation team stated: "Serve appropriate sentence." Immediately following this statement, the team commented:

"As indicated in the body of the report the [evaluating] team feels some period of incarceration is [warranted,] however it is also felt that the sentence should be structured in a manner that will enable the inmate to involve himself in the Alpha House treatment program in a reasonable period of time."

The defendant filed a motion to withdraw his guilty plea, which was denied by the district court. He also filed a motion to modify based on his TCF report. However, the district court denied the motion to modify without a hearing, stating that a hearing would serve no useful purpose.

### Trial Court's Duty to Modify Sentence Under K.S.A. 1993 Supp. 21-4603(d)(1)

K.S.A. 1993 Supp. 21-4603(d)(1) provides:

"Except when an appeal is taken and determined adversely to the defendant as provided in subsection (d)(2), at any time within 120 days after a sentence is imposed, after probation or assignment to a community correctional services program has been revoked, the court may modify such sentence, revocation of probation or assignment to a community correctional services program by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits *and shall modify such sentence if recommended by the Topeka correctional facility unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification.*" (Emphasis added.)

In *State v. Bruce*, 255 Kan. 388, 398, 874 P.2d 1165 (1994), we held that K.S.A. 1992 Supp. 21-4603(4)(a) (now designated as K.S.A. 1993 Supp. 21-4603[d][1])

"requires a district court to modify a defendant's sentence upon an unequivocal recommendation by TCF, unless the court makes certain findings on the record. [Citations omitted.] 'Absent an unequivocal recommendation for modification by the [TCF], the court has discretion in modifying sentence and commits no error in refusing modification of sentence absent an abuse of that discretion.' [*State v.*] *Moon*, 15 Kan. App. 2d 4, 10, 801 P.2d 59 (1990), *rev. denied* 248 Kan. 998 (1991).]"

There is no question that in order to trigger the requirements of K.S.A. 1993 Supp. 21-4603(d)(1), the recommendation of TCF must be unequivocal. Absent an unequivocal recommendation, the trial court has discretion in determining whether to modify, and we will reverse only upon the defendant establishing that the trial court abused this discretion in refusing to modify.

The defendant contends that the recommendation by TCF in this case is unequivocal. The State argues that the recommendation is equivocal, noting that it does not explicitly recommend modification.

In the section of the TCF report entitled "RECOMMENDATIONS TO THE COURT," Dr. Joseph Hysten, MSW, and John Sander, RMLP, state: "Based on the findings of the present evaluation, the team recommends: Serve appropriate sentence." Following this recommendation under "Comments," the report concludes:

"As indicated in the body of the report the [evaluating team] feels some period of incarceration is [warranted,] however it is also felt that the sentence should be structured in a manner that will enable the inmate to involve himself in the Alpha House treatment program in a reasonable period of time."

The defendant relies upon this comment in support of his argument that there is contained in the report an unequivocal recommendation for modification. We disagree.

The recommendation of TCF is that the defendant serve an "appropriate sentence." Beyond this, the team expresses its *feeling* that the sentence should be structured to allow the defendant the advantages of the Alpha House within a reasonable time. Simply stated, the comments of TCF do not constitute a recommendation for modification. The comment is at most equivocal because it fails to give specific guidelines but speaks to a broad objective, leaving up to the court the determination of what may be a reasonable sentence.

The comments of TCF came after an extensive hearing on sentencing. The court, after listening to numerous witnesses, including experts, testifying on the nature of the defendant's problem and the likelihood that treatment outside the correctional system in Kansas would meet the needs of the defendant and

those of society, and after considering extensive evidence in mitigation, including the defendant's mother and the defendant, imposed what it considered to be an appropriate sentence. TCF's unequivocal recommendation was for the defendant to serve an appropriate sentence. We have considered the TCF report and conclude that very little new information was contained in this report that was not presented to the sentencing court. In the absence of an unequivocal recommendation, it was not incumbent upon the court to restructure its sentence to reflect the *feelings* contained in the comment section of the TCF report.

Moreover, the court was powerless to impose a sentence which might have accomplished the broad objectives of TCF's comment section without imposing what TCF and the trial court would have deemed an inappropriate sentence. One of the court's overriding concerns was the protection of society and its consideration of the likelihood that treatment of the defendant, given his pedophilia diagnosis, would ever correct his problem. The court had no authority to guarantee that the defendant would receive treatment at Alpha House short of placing the defendant on probation with a condition of probation that he receive such treatment at his own expense. Such a disposition would have been inconsistent with the unequivocal recommendation of TCF that the defendant serve an appropriate sentence. Moreover, the court itself expressed serious doubts as to whether the defendant could afford such treatment.

Consistent with the comments of TCF, the trial court could have modified the sentence by drastically reducing the number of years so that the defendant would then be able to receive treatment at the Alpha House if such program were still available to him. The comments of TCF express a *feeling* that this should be accomplished in a "reasonable time." Given the real needs of society in this case, the nature of the defendant's condition and all other factors which the court considered in imposing its sentence, what, we ask, would be considered a reasonable time? Far from an unequivocal recommendation for modification, the comments of TCF express a feeling that the defendant should be afforded an opportunity for treatment in Alpha House and that the court

should structure a sentence to accomplish this broad goal with little or no direction or recommendation from TCF.

Even when faced with an unequivocal recommendation for modification under K.S.A. 1993 Supp. 21-4603(d)(1), a trial court must exercise its discretion by (1) determining on the record that the defendant's sentence should not be modified for reasons set forth in K.S.A. 1993 Supp. 21-4603(d)(1), or (2) imposing what it considers to be an appropriate sentence, taking into consideration the unequivocal recommendation contained in the TCF report. The modified sentence need not necessarily be the sentence modification recommended by TCF. In order for the trial court to exercise its discretion in responding to an unequivocal recommendation for modification by TCF, it is necessary that the TCF report suggest either an appropriate modification of the sentence or at least provide guidelines as to what it would consider an appropriate sentence to be.

In this case, K.S.A. 1993 Supp. 21-4603(d)(1) did not come into play because the comments from TCF did not constitute a recommendation but rather expressed a *feeling* that the defendant would profit from treatment at the Alpha House within a reasonable time. The only unequivocal recommendation by TCF was that the defendant serve an appropriate sentence.

### Motion to Modify

The defendant also argues that, at the very least, the comments of TCF raised a question as to whether it was recommending modification. Thus, according to his argument, the court was required to afford him a hearing to ascertain the intent of TCF and to determine whether TCF made a recommendation for modification. To do otherwise is, according to appellate counsel, a denial of due process.

The terms of the statute are clear. In order to trigger application of K.S.A. 1993 Supp. 21-4603(d)(1), there must be an unequivocal recommendation for modification. Because there was no unequivocal recommendation for modification in the TCF report, K.S.A. 1993 Supp. 21-4603(d)(1) does not apply. The defendant was, therefore, not entitled to a hearing on his motion

for modification. See *State v. Jennings,* 240 Kan. 377, 379, 729 P.2d 454 (1986). The failure to hold such a hearing did not violate the defendant's due process rights.

The defendant next argues that the district court's failure to order a hearing on his motion to modify violated K.S.A. 74-7335 of the Kansas Victim's Rights statutes. According to the defendant, K.S.A. 74-7335(b) expressly defines a motion to modify hearing as a "public hearing" and since the victim has a right to be present at a "public hearing", the defendant had a right to a hearing.

Unfortunately, the defendant misinterprets the statute. K.S.A. 74-7335(a) states that the victim of a crime or the victim's family shall be notified of the right to be present at any public hearing where the accused or convicted person has the right to appear. The statute defines a "public hearing" as any hearing which is required to be open to the public, including sentencing modification. K.S.A. 74-7335(b)(1)(D).

However, the statute gives the crime victim a right to be present only in those proceedings where an accused or convicted person has a right to be present. K.S.A. 74-7335(a). A defendant has no right to a hearing on the issue of modification of sentence. *State v. Jennings,* 240 Kan. at 379. If a hearing had been conducted, and the defendant had been present, the victims would have had a right to be present under K.S.A. 74-7335; however, the statute does not mandate that a hearing be held.

### Entry on the Record of a Finding of Guilty

The defendant contends that his guilty plea was not validly entered. He argues that the district court failed to adjudge him guilty on the record and, thus, violated K.S.A. 22-3210(b). K.S.A. 22-3210(b) provides that for a guilty plea to be accepted, "[i]n felony cases the defendant must appear and plead personally and a verbatim record of all proceedings at the plea *and entry of judgment* thereon shall be made." (Emphasis added.)

The disposition of this issue is resolved by our recent decision in *State v. Heffelman,* 256 Kan. 384, Syl. ¶ 3, 886 P.2d 823 (1994), wherein we held: "A failure to comply strictly with the ex-

plicit requirements of K.S.A. 22-3210 may be reversible error, unless upon review of the entire record it can be determined the pleas were knowingly and voluntarily made and otherwise accepted by the trial judge in compliance with the statute."

Just as in *State v. Heffelman*, the record in this case affirmatively shows that the defendant intended to plead guilty. The defendant stated that his plea was knowing and voluntary; he actually entered the plea of guilty. The district court satisfied itself that there was a factual basis for the plea and ordered a presentence investigation. Sentencing proceeded with no indication that the defendant felt he had not been found guilty. Moveover, the docket sheet notes that "Defendant pleads guilty," thus evidencing that the defendant did indeed intend to plead guilty. Under these circumstances, the failure of the court to strictly comply with K.S.A. 22-3210(b) was not reversible error. See *State v. Heffelman*, 256 Kan. 384, Syl. ¶ 3.

## Expert Testimony at Sentencing

The defendant contends that the district court erred by admitting over objection the testimony of Dr. Stephen Peterson at the sentencing hearing. The defendant argues that because Dr. Peterson had never examined the defendant personally and because Dr. Peterson himself testified that he could not provide a diagnosis for someone he had not seen, there was no foundation for the admission of Dr. Peterson's testimony. The defendant also contends that part of Dr. Peterson's testimony was hearsay because it was based on facts neither perceived by him or admitted into evidence.

We begin our discussion with a recognition that the defendant's objections to admissibility come in the sentencing phase of the trial. With the exception of the sentencing in hard 40 and death sentence cases, sentencing hearings transpire before the court without a jury. We note, however, that even in hard 40 and death sentence cases the law does not require the strict application of the rules of evidence:

"In the sentencing proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of sentence and shall in-

clude matters relating to any of the aggravating circumstances enumerated in K.S.A. 1993 Supp. 21-4625 and amendments thereto and any mitigating circumstances. Any such evidence which the court deems to have probative value may be received *regardless of its admissibility under the rules of evidence*, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements." K.S.A. 1993 Supp. 21-4624(3). (Emphasis added.)

The provisions of K.S.A. 21-4601 and K.S.A. 21-4606 require a trial court to consider all relevant information concerning a defendant in order that the court may impose an appropriate sentence consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime. In felony convictions, K.S.A. 1993 Supp. 21-4604(a) requires the court to order a presentence investigation unless the court finds that adequate and current information is available in a previous presentence investigation report or from other sources. Information required to be included in a presentence investigation report necessarily includes hearsay as well as other facts which may not be admissible under a strict application of the rules of evidence. See K.S.A. 1993 Supp. 21-4604(b). The law requires that the report be made available to the defendant upon request. K.S.A. 1993 Supp. 21-4605(a)(1). It does not prohibit the trial court from considering all relevant entries in the report.

There is a marked difference between the portion of the trial dedicated to the determination of guilt or innocence and that portion of the trial dedicated to sentencing. We have never required a strict application of the rules of evidence in the sentencing phase of a trial. To do so, in many instances, would deprive the court of the information necessary to fulfill its responsibilities under the provisions of K.S.A. 21-4601 and K.S.A 21-4606.

The fact that the trial court may not have strictly applied the rules of evidence in ruling on the admissibility of Dr. Peterson's testimony at sentencing did not constitute error. At the same time, we do address the specific contentions of the defendant, for even under strict application of the rules of evidence the defendant suffered no prejudice.

The defendant's first argument is that there was no foundation for Dr. Peterson's testimony because Dr. Peterson had not ex-

amined the defendant and admitted that he could not make a diagnosis. Dr. Peterson testified that his opinion was based on the testimony of the witnesses who did interview the defendant and the defendant's own testimony as well as a review of the case files. These were facts admitted into evidence.

K.S.A. 60-456(b) states that where a witness is testifying as an expert, the witness' opinions must be based on facts or data perceived by or personally known or made known to the witness at the hearing and must be within the scope of the special knowledge, skill, experience, or training possessed by the witness. Perceived knowledge is knowledge acquired through one's own senses. *In re Watson*, 5 Kan. App. 2d 277, 278, 615 P.2d 801 (1980). Knowledge made known to the witness refers to facts in evidence. 5 Kan. App. 2d at 278. The qualifications of an expert witness and the admissibility of the expert's testimony are matters within the trial court's discretion. *State v. Strauch*, 239 Kan. 203, 214, 718 P.2d 613 (1986).

Under the above standards, even though Dr. Peterson testified that he could make only a provisional diagnosis because he did not personally interview the defendant, the trial court properly admitted this portion of Dr. Peterson's testimony. The defendant's argument goes to the weight given the testimony rather than its admissibility.

The defendant also argues that a portion of Dr. Peterson's testimony was hearsay. On cross-examination, Dr. Peterson testified that he relied upon a report submitted by Dr. Dolittle, who had evaluated one of the victims in this case. The report was not submitted into evidence. However, it is clear that the main portion of Dr. Peterson's testimony and the bulk of his conclusions about the defendant were based on the evidence which had been presented by the defendant's expert witnesses and by the defendant himself in open court. As we concluded above, the admission of this portion of Dr. Peterson's testimony was not error.

Affirmed.