(922 P.2d 1109)

No. 72,747

STATE OF KANSAS, *Appellee*, v. HAROLD TORRANCE, *Appellant*.

Opinion filed August 9, 1996.

*Jack W. Shultz*, of Shultz & Shultz, Chartered, of Dodge City, for appellant.

*E. Leigh Hood*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., MARQUARDT, J., and STEPHEN. D. HILL, District Judge, assigned.

HILL, J.: Harold Torrance appeals his conviction and sentence for aggravated assault, pursuant to K.S.A. 21-3410 (Ensley 1988). On September 6, 1994, Torrance was sentenced to the custody of the Secretary of Corrections for an indeterminate term of imprisonment, a minimum of 2 years and a maximum of 10 years. He was convicted by a jury on March 24, 1994. The jury found Torrance guilty of aggravated assault as a result of an incident that occurred on June 24, 1993.

Torrance owns Green Acres Enterprises, which sells mobile home lots. Masimo Maldanado Vargas purchased such a lot from Torrance on a contract for deed. On June 24, 1993, Vargas met with Torrance to discuss his remaining payments. Vargas' wife accompanied him but remained in their van the entire time.

During the course of their discussions, Torrance and Vargas disagreed. Vargas offered to pay Torrance the remaining two contract payments totalling $450. However, Torrance refused to accept the

payments and deliver the deed to the mobile home lot until Vargas paid a disputed water bill. These discussions took place in Torrance's office. After the argument started, both men left the office.

Vargas testified that Torrance said to him, either in a low voice or by whispering, "I'm going to kill you." Torrance denies this. Other witnesses testified that Torrance said something to Vargas, but they could not make out what had been said. Vargas then began speaking in Spanish, which Torrance does not understand. Vargas did shout several times in English, "Kill me, kill me." Torrance testified that Vargas did shout, "Kill me," but stated he did not know why.

One of Torrance's employees, Roberto Torrez, came up and began to argue with Vargas in Spanish. Torrance turned and left the two men and walked toward his office. He went to his own van and retrieved a .12 gauge shotgun. Torrance pumped the action on the gun.

Torrance testified that he pulled the gun out of the van because he was thinking, "I might save Roberto's life." Later in his testimony, he stated that he knew that Torrez could take care of himself. Furthermore, he admitted that he had pulled it out as a "scare tactic."

The sound of the shotgun being pumped was loud enough for all to hear. Vargas and the other witnesses saw Torrance pump the gun and turn toward Vargas. Vargas then turned his back to Torrance to leave. Torrance then pointed the shotgun at Vargas, but Vargas never did see Torrance point the shotgun at him. At this point, Vargas' wife told Vargas, "Let's go. He are [sic] going to kill you." Vargas' wife saw Torrance point the gun at Vargas. Torrance denied pointing the gun, and Torrez denied seeing Torrance point the shotgun at Vargas.

Vargas thought that Torrance was going to shoot him when he heard him pump the shotgun. He stated, "I got scared. I was mad and nervous, but in that moment my stomach, I had something in my stomach." Vargas left the scene and reported the incident to the sheriff.

Torrance raises seven issues in his appeal. He argues that the trial court erred when it allowed Mrs. Vargas' statement into evi-

dence. Further, Torrance argues that the court erred when it excluded evidence of a transaction that occurred between Vargas and Torrance 4 days after the incident in question. Third, Torrance argues that the trial court erred when it admitted Torrez' testimony concerning Torrez' lack of apprehension. Fourth, Torrance argues that the trial court erred when it denied his motion to dismiss or for acquittal at the close of the State's case. Fifth, Torrance argues that the court failed to instruct on a lesser included offense. Sixth, Torrance believes that the trial court erred when it did not consider his motion for a new trial on the merits. Finally, Torrance argues that the trial court erred when it did not properly consider certain matters at his sentencing.

We will deal with these issues in order and will provide additional facts when necessary.

The trial court admitted, over the objection of Torrance, the statement of Vargas' wife. He states that the effect of the admission of her statement into evidence substitutes Mrs. Vargas' apprehension for Vargas' own apprehension of immediate bodily harm. Vargas stated that when he was approaching the van, Mrs. Vargas said, "Let's go. He are [*sic*] going to kill you." Torrance objected to this statement on the basis of hearsay. Initially, the trial court admitted the evidence as part of the res gestae and then, later, as an exception to the hearsay rule as an excited utterance.

Hearsay evidence is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 60-460. The State argued that Vargas could retell what his wife told him because of three exceptions to the hearsay rule. K.S.A. 60-460(a) allows a hearsay statement if the person is available for cross-examination "provided the statement would be admissible if made by declarant while testifying as a witness." Furthermore, K.S.A. 60-4670(d)(1) allows a statement from a declarant made while perceiving an event. And, finally, K.S.A. 60-460(d)(2) allows a statement made while a declarant was under "the stress of a nervous excitement caused by such perception."

Clearly, Mrs. Vargas was available for cross-examination at the trial. She was a witness to the confrontation between her husband

and Torrance. Although Mrs. Vargas does not understand English, she could certainly perceive what was happening. She could see Torrance going to his van and retrieving the shotgun. She could see Torrance pumping the shotgun and pointing it at her husband. Any statement she gave while she was perceiving such an event is admissible pursuant to K.S.A. 60-460(d)(1) and (2).

Despite the fact that Mrs. Vargas was available for cross-examination, Torrance argues that her statement was not relevant. His argument goes to the crux of the offense. It is his position that Mrs. Vargas was frightened and that because her statement was admitted, the jury could substitute her fear for that of her husband, since his back was turned to Torrance when he pointed the shotgun at him. While it is true that Mrs. Vargas' fear cannot be used to show Vargas' apprehension, her statement proves the contention that Torrance was intentionally threatening Vargas and that he did so with a deadly weapon.

The trial court also admitted Mrs. Vargas' statement under a res gestae theory. Res gestae and the hearsay exception of K.S.A. 60-460(d) are separate avenues by which evidence may be admitted; both avenues need not be satisfied in order for the evidence to be admissible. *State v. Sanders*, 258 Kan. 409, 419, 904 P.2d 951 (1995). *Sanders* also provides a test for res gestae which trial courts may employ. The trial court "must first determine whether the evidence constitutes part of the res gestae. If it does, the evidence may be admitted if it is relevant to show the relationship of the parties or the defendant's motive, opportunity, intent, or identity." 258 Kan. at 422. In this case, Mrs. Vargas' statements can be used to show Torrance's motive, opportunity, intent, and identity.

Even though Mrs. Vargas does not speak English, Torrance's actions were sufficient for her to understand his intent. While it is true that Mrs. Vargas' statements did have the potential to mislead the jury as to who was in apprehension of the threatening actions of Torrance, the testimony of Vargas and the other witnesses clearly indicated that Vargas was shaken and understood the threat that was made against him. It is in the discretion of the trial court whether to admit evidence after weighing its probative value

against its prejudicial value. This court will not reverse unless judicial discretion is abused.

"Judicial discretion is abused if judicial action is arbitrary, fanciful, or unreasonable, which is another way of stating that discretion is abused only if no reasonable person would take the view adopted by the trial court. If reasonable persons could differ regarding the propriety of the action taken by the trial court, it cannot be said that the trial court abused its discretion." *State v. Warden*, 257 Kan. 94, 116, 891 P.2d 1074 (1995).

We find no abuse of discretion or error of the trial court in admitting Mrs. Vargas' statements. Her statements were admissible under the hearsay exceptions and the res gestae theory stated above. Her statements were relevant to show Torrance's intent to threaten Vargas and that he did so with a deadly weapon.

Turning to the second issue, we find that the trial court did not abuse its discretion when it excluded evidence of a transaction between Vargas and Torrance 4 days after the incident with the shotgun. Torrance wanted to admit evidence that Vargas returned 4 days after the argument to pay his water bill. Torrance believes that evidence was relevant to contradict Vargas' testimony that he was scared. The trial court determined that what happened 4 days after the event could not negate any immediate apprehension of bodily harm that Vargas may have experienced earlier.

We agree that such evidence is not relevant, and we find no abuse of discretion by the trial court in refusing to admit it.

In his third issue, Torrance alleges that the court erred when it allowed into evidence testimony that Roberto Torrez was not scared at the scene. Torrance argues that whether Torrez felt he was in danger was irrelevant to whether Torrance thought Torrez was in danger. This centers upon the defense raised by Torrance, the defense of another. The validity of the defense of another defense requires the application of both a subjective and objective test. The first test is whether Torrance believed it was necessary to defend Torrez. The second test is whether Torrance's belief was reasonable. See *State v. Rutter*, 252 Kan. 739, 746, 850 P.2d 899 (1993). In this case, Torrez's testimony concerning whether he was afraid was admissible to show whether Torrance's subjective opinion was objectively reasonable.

We find the admission of this evidence is proper and not an abuse of discretion.

The fourth issue raised by Torrance is whether the trial court erred in denying his motion to dismiss or for acquittal at the close of the State's case. A motion for judgment of acquittal is substantially the same as a motion attacking the sufficiency of the evidence. When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Cruz*, 15 Kan. App. 2d 476, 488, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991).

K.S.A. 21-3410 (Ensley 1988) defines aggravated assault as "[u]nlawfully assaulting or striking at another with a deadly weapon." Assault is defined in K.S.A. 21-3408 (Ensley 1988) as "an intentional threat or attempt to do bodily harm to another *coupled* with apparent ability and resulting in immediate apprehension of bodily harm." (Emphasis added.)

Here, Vargas testified that Torrance told him, "I'm going to kill you." Furthermore, Torrance told Vargas to "[g]et out of here, off of my land and move away." Several witnesses saw Torrance retrieve the shotgun from his van, heard and saw him pump the shotgun, and saw him point the gun at Vargas. While it is true that Vargas did not personally see the shotgun pointed at him, the act of pumping the shotgun communicates a threat in this situation far more eloquently than words. Communication does not require verbal action. K.S.A. 21-3110(24) defines threat as a "communicated intent to inflict physical or other harm on any person or on property." In the case of *In re T.K.*, 11 Kan. App. 2d 632, 633, 731 P.2d 887 (1987), this court found sufficient evidence of a communicated threat when the victim heard the defendant "click the action on the gun as if he were loading a shell."

K.S.A. 21-3410 (Ensley 1988) does not require verbal threats to be made at the same time as the apparent ability to carry out the threat. The term "coupled" which is used in K.S.A. 21-3408 (Ensley 1988) denotes a close time but not necessarily actions that are simultaneous. In this case, Torrance made the verbal threats, went

to his van, pulled out the shotgun, jacked the pump action on the shotgun, and pointed the shotgun at Vargas' back. The acts and words are so closely related that they constitute the same intentional threat.

Furthermore, Vargas testified that he was scared and that he thought Torrance was going to shoot him. When viewed in the light most favorable to the prosecution, there is sufficient evidence that a reasonable factfinder could, beyond a reasonable doubt, find Torrance guilty of aggravated assault. We find no error in the trial court denying Torrance's motion to dismiss or for an acquittal at the close of the State's case.

For his fifth issue, Torrance argues that the trial court should have instructed the jury on the elements of the lesser included offense of assault. The State argued that Torrance was either guilty of aggravated assault or not guilty. The trial court did not instruct upon the theory of assault.

It is well established that a trial court has an affirmative duty to instruct the jury on all lesser included offenses established by the evidence. K.S.A. 21-3107(3). Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. An instruction on a lesser included offense is not given however, if the evidence at trial excludes a theory of guilt on the lesser offense. The duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at trial is such that the defendant might have reasonably been convicted of the lesser offense. *State v. Deavers*, 252 Kan. 149, 151, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993).

A review of the evidence introduced at Torrance's trial does not support a jury instruction on the theory of assault. Although Torrance argues that the lesser included offense was the verbal threat when he did not have the shotgun in his hand, the State correctly points out that if Torrance did not have the apparent ability to inflict bodily harm at that point, he could not have been found guilty of assault. In this case, if the jury did not believe that the actions of Torrance with the shotgun was sufficient to communicate a threat, then Torrance was not guilty of any crime. We find

no error in the trial court refusing to give a lesser included offense instruction on assault.

As his sixth issue, Torrance argues that the trial court erred when it refused to rule upon his motion for a new trial on its merits. In this case, the jury returned a verdict on March 24, 1994. The journal entry of conviction was filed on April 27, 1994. Torrance filed his motion for a new trial on May 5, 1994. He later amended his motion for a new trial on June 16, 1994. The State challenged the court's jurisdiction to hear the motion, claiming that it was not timely filed under K.S.A. 22-3501. The trial court agreed and dismissed Torrance's motion for a new trial for being untimely filed.

This is an issue of law, and this court's jurisdiction over questions of law is unlimited. See *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995). The statute is clear that motions for new trials in criminal cases must be filed within 10 days of the verdict and not within 10 days of the filing of a journal entry containing the verdict.

Torrance argues that it was the common practice of the "local legal culture" within the 16th Judicial District to file motions for new trials within 10 days of the filing of the journal entry that contained the verdict or finding of guilty. He argues that the language in K.S.A. 22-3501 allowing for "such further time as the court may fix" suggests that it is discretionary for the trial court and that it can extend the time for filing. That is incorrect. K.S.A. 22-3501 requires a motion for a new trial be filed within 10 days of a "verdict or finding of guilty." It is discretionary for the trial court to grant an extension of time for this filing if such application for an extension was made within the 10-day statutory period. Here, the trial court followed the statute and denied the motion. Torrance's motion was not timely filed within 10 days of March 24, 1994.

Finally, Torrance argues that the trial court erred at his sentencing. He argues that the impeachment by the prosecution of his character witnesses was a prejudicial attempt to introduce hearsay at his sentencing. Furthermore, he argues that it was manifestly unjust to impose mandatory imprisonment for his use of a firearm pursuant to K.S.A. 1992 Supp. 21-4618.

At the sentencing, Torrance called several witnesses. During cross-examination of the witnesses, the State asked if they had ever heard of R.L. and whether they knew that she had obtained a protective custody order against Torrance. The State also asked the witnesses whether they knew about past incidents in which Torrance was investigated for allegedly receiving stolen property, an accusation of unlawful dumping of refuse on his property, a disturbance of the peace call, and an investigation for theft.

Torrance claims that the State was attempting to introduce this evidence in order to prejudice the court at his sentencing.

We think that Torrance ignores the differences between a trial and a sentencing.

"There is a marked difference between application of the rules of evidence in that portion of the trial dedicated to the determination of guilt or innocence and that portion of the trial dedicated to sentencing. This court has never required a strict application of the rules of evidence in the sentencing phase of a trial. To do so in many instances would deprive the court of the information necessary to fulfill its responsibilities under the provisions of K.S.A. 21-4601 and K.S.A. 21-4606." *State v. Sims*, 256 Kan. 533, Syl. ¶ 8, 887 P.2d 72 (1994).

We do not find any evidence in the record that these questions and answers prejudiced the court. The sentencing court had no discretion to impose any sentence other than a term of imprisonment pursuant to K.S.A. 1992 Supp. 21-4618 because this crime was committed with a firearm.

In the second part of his argument, Torrance argues that the imposition of imprisonment in his case was manifestly unjust. He believes that incarceration is too harsh in his case. The determination whether a sentence has resulted in manifest injustice must be made on a case-by-case basis under a "shocking to the conscience" consideration; that is, whether the trial court has abused its discretion by imposing a sentence that is obviously unfair and shocks the conscience of the court. *State v. Coleman*, 19 Kan. App. 2d 412, Syl. ¶ 2, 870 P.2d 695, *rev. denied* 255 Kan. 1004 (1994).

In this case, the sentencing court acknowledged cases regarding manifest injustice. The court specifically examined each statutory factor as set out in K.S.A. 21-4606. It noted, in passing, that Torrance did not feel like he had done anything wrong and that he has

the tendency to "get agitated." The trial court also found that Torrance acted in a retaliatory fashion towards the people involved in the case and concluded that it would not be manifestly unjust to impose a term of imprisonment of 2 to 10 years. The judge stated unequivocally, "Well, I'm not pre-supposing anything" and, even though the trial court did refer to Torrance's "contacts with the law," the court noted that the contacts did not result in any convictions. The court did not appear to be prejudiced. Rather, the sentencing court considered the statutory factors and imposed the sentence within the statutory guidelines. The sentence is within statutory limits and is not obviously unfair, nor does it shock our conscience. We find no abuse of discretion or manifest injustice in the sentence received by Torrance.

The trial court did calculate Torrance's sentence pursuant to the Kansas Sentencing Guidelines Act (KSGA) and, although neither of the parties raised the issue that Torrance would be eligible for a sentence conversion, the Department of Corrections (DOC) clearly could require that Torrance serve the lesser of the two sentences pursuant to *State v. Fierro*, 257 Kan. 639, 651, 895 P.2d 186 (1995). According to *Fierro*, the DOC should also apply K.S.A. 21-4724(b) to provide Torrance the same opportunity for retroactivity as offenders sentenced prior to July 1, 1993. The firearms provisions under K.S.A. 21-3410 (Ensley 1988) and K.S.A. 21-4704(h) do not preclude conversion in this case. See *State v. Sidders*, 20 Kan. App. 2d 405, Syl. ¶ 2, 888 P.2d 409, *rev. denied* 257 Kan. 1096 (1995). We find no errors in the sentencing imposed by the trial court in this case.

We affirm the conviction and remand the case with directions for the DOC to evaluate this case for conversion to a KSGA sentence.