## J. H. BURRAGE *v.* STATE.

[58 South. 217.]

1. CRIMINAL LAW. *Appeal. Preservation of objections. Motion for new trial. Competency of jurors. Peremptory challenge. Special judge. Receiving verdict on Sunday.*

Where the court permitted the district attorney over the objection of the defendant to cross-examine him with reference to his application for a continuance, but no question was asked with reference to his guilt or innocence of the crime charged against him, such action by the court cannot be considered on appeal, where the point was not reserved in a motion for a new trial and was therefore waived.

2. COMPETENCY OF JUROR. *Personal opinions. Negro testimony.*

Even where the jurors have been accepted by both sides and the panel is complete, one of the panel may be challenged for cause, where the evidence relied on by the state is negro testimony and such juror admits that he would not convict on negro testimony.

3. SAME.

In such case the peremptory challenge of the juror was harmless as such juror was incompetent and should be set aside for cause.

4. SPECIAL JUDGE. *Powers.*

Where during the progress of a trial for murder it becomes necessary for the judge presiding to leave the court and absent himself therefrom for several days and the governor in accordance with the statute, governing such cases appointed a special judge by consent of all parties, to preside over the court in the absence of the regular judge such special judge was empowered to try all issues which might be presented to him during the absence of the regular judge.

5. SAME.

In such case the fact that the special judge continued the trial from the point where the regular judge had left off, cannot on appeal be assigned as error and it is immaterial that the regular judge had consented that this assignment of error might be made.

6. SUNDAY. *Reception of verdict.*

The reception of a verdict in a murder case on Sunday is not invalid, its reception being merely a ministerial act.

APPEAL from the circuit court of Madison county.
HON. W. A. HENRY, Judge.

J. H. Burrage was convicted of murder and appeals.

The facts are sufficiently stated in the opinion of the court.

*W. H. & R. H. Powell,* for appellant.

We cannot in this brief or in oral argument, which we desire, elaborate all of the errors that we have assigned, twenty-five in number, and will have to trust to the court to give to each assignment, such consideration as may be merited.

Certainly the court erred in not granting the continuance and in not granting a new trial, and in other respects which we will now discuss.

It is an old saying that "it is bad to swap horses in the middle of the stream." That was done for us, and we believe was one of the causes of conviction.

Judge Henry presided a while and Judge Robert Powell presided for a while. We do not believe that this was legal. We told Judge Henry that we would not make any point on this, and we intended to keep our contract, but he magnanimously has released us from that agreement, and requested us, or rather agreed that we should raise this question as error. We insist that this was error and a mistrial should have been entered. Judge Powell, who did not hear the testimony but who was presiding during the argument could not and did not stop the district attorney in commenting upon matters, not in evidence, to the great detriment of defendant, because he did not know what had been adduced in evidence. The jury was locked up two days waiting for Judge Henry to return to court and the trial was sus-

pended and did not resume until Juge Powell ascended the bench on Saturday. The jury was tired out and gave a Saturday night verdict, or rather a Sunday morning verdict hostile to the defendant.

The jury deliberated on Sunday and actually returned the verdict in this case on Sunday and Judge Powell accepted the verdict on Sunday and finally discharged the jury on Sunday, and for this the defendant moved in arrest of judgment as shown by the record which the court overruled, record 377, and we have assigned that as error.

Now, we are aware that in some states, this would be legal, because of the statute law of such state, or the want of such statute.

But in Mississippi, Sunday or rather the Sabbath is made a "*dies non*" by the statute and only those things can be done on the Sabbath, as are expressly authorized by the statute. For example, by Sec. 143, of the Code, attachment can be executed on Sunday, by Sec. 992, writs of *habeas corpus,* etc., may be executed on Sunday. By section 1367, druggist may sell medicines on Sunday, but nowhere, in the Code can we find that it is legal for a jury to deliberate on a murder case on Sunday. Nowhere in our Code can we find that a jury can return a verdict on Sunday or that enables a judge to accept such verdict, and finally discharge the jury from the consideration of the case. "*Expressio unius est exclusio alterius,*" I believe is the maxim. We say that this defendant was not convicted on a legal day, in a legal way, and that the motion to arrest judgment should have been sustained.

We do not wish the court to think we have waived any of the errors assigned, because we have not discussed them, for we do not waive any of them, but we have not discussed each one for the reason that this brief is becoming prolix, and wearying to the court.

The court below committed fatal error in allowing the state to peremptorily challenge the juror, T. J. Pitch-

ford, after he had been accepted by the state and presented to defendant and after the defendant had accepted him.

See record where the jury of twelve men, including Pitchford, is tendered to the state for acceptance or rejection, and after the state accepted him as a juror the defendant accepted him. See further examination of Pitchford on pages 74 and 82.

The court after such acceptance, by both the state and defendant, allowed the state to peremptorily challenge him over objection of defendant.

This was fatal error and must alone cause a reversal of this cause.

By Code 1871, Sec. 2761, it was provided that "All peremptory challenges by the state shall be made before the juror is presented to the prisoner."

This section was construed by your honorable court in *Stewart* v. *State,* 50 Miss. 587, *et seq.,* wherein the case was reversed for this same error. On page 589 thereof, near the bottom, the court said:

"The peremptory challenge of a juror by the state after he had been presented to the prisoner was in disregard of the positive letter of the statute. The Code, Sec. 2761, enacts that all peremptory challenges by the state shall be made before the juror is presented to the prisoner." And on top of page 590, the court further said: "Hence, the motion for a new trial ought to have been sustained. This result is inevitable. All persons accused of crime are entitled to trial according to the forms, and the letter and the spirit of the law." We say *"les ites scriptu est."*

This case has not been overruled, modified, or distinguished and was the law in 1874 and has ever been since. This section on this point was re-enacted in the Codes of 180 and 1892, Sec. 1423, and Code 1906, Sec. 1496, and Laws of 1908, Ch. 172, page 187.

All these subsequent enactments of the Code of 1871 were with the full knowledge of the construction by this

court in the *Stewart case, supra,* and it must be conclusively presumed that the legislature was satisfied with such construction, as no change was made in such later enactments.

*W. J. Croom,* for appellant.

During the trial of this cause after the state had accepted the panel, and the panel had been presented to the appellant, the state over the objection of the appellant, was permitted to peremptorily challenge the juror, Pitchford, and that after Pitchford had been accepted both by the state and the appellant, and mark you this was done by the state peremptorily not by a challenge for cause but by a peremptory challenge, and this I say, was in the very teeth of the statute, Sec. 1496 of the Code, and in the face of *Stewart* v. *State,* 50 Miss. 587, and I say that this was fatal error.

During the further progress of this trial, Judge W. A. Henry vacated the bench, and Judge Robert Powell, who had not heard any of the testimony, and knew nothing about the facts in the case, was appointed, and took the bench, and finished the trial of this case, which, I say, was error. That if for any reason Judge Henry, the presiding judge, could not finish this trial, a mistrial should have been entered, and a new trial had. In concluding this trial before Judge Powell, many errors took place which the court could not help, being then presided over by Judge Powell, and he not being in a position to rule on the questions brought before him, because he said that he did not hear the evidence and therefore could not rule.

*Ross Collins,* attorney-general, for appellee.

As to the error assigned on account of the action of the court for excusing the juror, Pitchford, we submit that it was not error to excuse him, and if error, was not prejudicial to the defendant.

The facts about this juror are: that he qualified on his first examination and the district attorney accepted him, and turned him and the balance of the panel over to the defense. When the defendant's lawyers examined him, it developed that he would not convict any man on the testimony of negroes; thereupon the district attorney proceeded to question the juror further with reference to his aversion to convicting on negro testimony. When it became clear that Pitchford was incompetent to sit in this case due to the fact that all of the witnesses were negroes, and before the district attorney had completed his examination of him, the counsel for defendant objected to any further examination from the district attorney and announced, "The defense accepts Mr. Pitchford and all of the balance of the jury except . . . but before he could complete the sentence, the district attorney interrupted him and said: "Wait a minute. Now I will ask the court for the privilege of withdrawing my acceptance of Mr. Pitchford and I want to challenge peremptorily." This the court allowed to be done and Mr. Pitchford was excused. We submit that the court acted properly. Pitchford had been accepted under a mistake by the district attorney, and it was evidently proper to allow the district attorney to withdraw his acceptance. The defendant was in no way prejudiced. All he was entitled to was a fair and impartial jury, he had no right to have any particular person sit as a juror in his case.

In the case of *Mabry* v. *State,* 71 Miss. 716, it is held that if any doubt arises as to the competency of a juror, he should be excused. The court has the discretion to do this at any time before the evidence is submitted. Under the disclosure made by Mr. Pitchford that he would not convict on negro testimony, the court had at the time such disclosure was made, and before the evidence begun to be submitted, the right to excuse him for cause. Manifestly it was not prejudicial error for the

court, instead of doing this, to allow the state to challenge him peremptorily.

The case of *Stewart* v. *State,* relied on by appellant, was entirely different. In that case, there was no incompetency justifying the excuse for cause of the jurors allowed to be peremptorily challenged. In the case at bar, while in form, the juror, Pitchford, was peremptorily challenged, still, as a matter of fact he was in reality, retired from the jury on account of incompetency.

The defendant was not prejudiced; he used only three of his challenges. He was tried by a fair and impartial jury. If Pitchford had been kept on the jury, it would have prevented a fair trial.

SMITH, J., delivered the opinion of the court.

Appellant, having been in the court below convicted of murder and sentenced to imprisonment for life in the state penitentiary, appeals to this court. When the case came on for trial, he filed a motion for a continuance on the ground of the absence of witnesses, who would testify to matters material to his defense.

In order to ascertain the truth of the matters set up in this application, the district attorney, over the objection of appellant, cross-examined him with reference thereto, but asked him no questions with reference to his guilt or innocence of the crime for which he was on trial. The action of the court in permitting appellant to be thus examined is assigned for error, but we cannot consider the same for the reason that the point was not reserved in the motion for a new trial, and was therefore waived.

It appears from the special bill of exceptions that during the progress of the trial in the above cause, which had proceeded to the point of impaneling the jury to try the cause, the state had accepted a full panel of twelve competent, qualified jurors to try the cause, and

had tendered and presented said full panel of twelve jurors, among whom was a juror by the name of T. J. Pitchford, to the defendant, and, after the defendant had accepted the said juror T. J. Pitchford, the state, over the objection of the defendant then and there made, was, by the court on the application of the state, and over the objection of the defendant, allowed to peremptorily challenge and take off of the jury to try this cause the said juror T. J. Pitchford, who had been accepted by the state, and tendered and presented by the state to the defendant, and accepted by the defendant, to try the case.''

It appears from the evidence that Pitchford, after he had been accepted by the state, and while being examined by the defendant, indicated that he would not convict any man on trial for murder upon negro testimony; thereupon, the court permitted the district attorney to further examine him, and, in answer to specific questions, he stated that he would not accept, or convict upon, negro testimony. The witnesses by whom the state expected to, and did, prove the guilt of appellant, were negroes. Pitchford was therefore an incompetent juror, and it became the duty of the court to set him aside, even though he had been accepted by both the state and the defendant.

That he was challenged peremptorily by the state, instead of being set aside for cause, is wholly immaterial, for the reason that we must presume that the court, without this challenge, would have discharged this duty of setting the juror aside. The rule announced in *Stewart* v. *State,* 50 Miss. 587, is therefore not here involved.

During the progress of the trial, it became necessary for the judge presiding to leave the court and absent himself therefrom for several days, and the governor, in accordance with the statute governing such cases, appointed Judge Robert Powell as special judge to preside

over the court in the absence of the regular judge. By agreement between counsel for the state and appellant Judge Powell proceeded with the trial of appellant. In the motion for new trial one of the reasons assigned for the setting aside of the verdict is the fact that this special judge concluded the trial, it being alleged that the defendant was thereby prejudiced for the reason that he, the special judge, had not heard the testimony in the case. Counsel in their brief say that they made their agreement for the special judge to proceed with the case in good faith, intending to abide thereby, but that the regular circuit judge had released them from this agreement, and indicated that he would like to see the point presented to and decided by this court. The appointment of the special judge was regular and in accordance with the statute, and consequently he was empowered to try all issues which might be presented to him during the absence of the regular judge. It may be that on objection by appellant he ought not to have proceeded with his trial, but should have begun anew, as to which we express no opinion, for the reason that appellant having consented thereto cannot now assign it as error, and it is immaterial that the regular judge has consented that this assignment of error be made.

The jury retired to consider their verdict on Saturday night, and at 12:06 a. m. Sunday morning reported that they were ready with their verdict, which the circuit judge thereupon received in open court. This action of the court is assigned for error on the ground that, Sunday being in law *dies non,* a verdict rendered on that day is a nullity. It is true that we have no statute providing that verdicts may be received on Sunday, and it may be that a judgment rendered on Sunday is void, but "in regard to the delivery and reception of verdicts a different rule applies, as the rendering of a verdict is a mere ministerial act, and it is an act of necessity and charity to receive it, and not keep the

jurors confined until Monday." 37 Cyc. 589, and authorities there cited. The court therefore committed no error in receiving this verdict.

After making a careful investigation of all of the other matters complained of, we find no reversible error therein.                                        *Affirmed.*