No. 30,024.

THE STATE OF KANSAS, *Appellee,* v. BERT L. SWEETIN, *Appellant.*

(8 P. 2d 397.)

Opinion filed March 5, 1932.

. *Louis R. Gates* and *E. E. Martin,* both of Kansas City, for the appellant.

*Roland Boynton,* attorney-general, *R. O. Mason,* assistant attorney-general, *Frederick R. White,* county attorney, and *Lee E. Weeks,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Bert L. Sweetin was charged with the murder of Laura L. Stine, his sister-in-law, convicted of murder in the first degree, and the judgment rendered was imprisonment in the state penitentiary for life. He appeals from the judgment, and his principal grounds for reversal are assigned errors in the instructions of the jury.

It appears that he and his wife had had a number of quarrels prior to the homicide and each of these was followed by a separation, when his wife would go to live with Laura L. Stine, her sister. After a quarrel on November 6, 1928, his wife went to Mrs. Stine's home in Kansas City, Mo., and shortly afterwards she filed a suit for divorce against her husband. Charles Thomas was the father of Ethel Sweetin and Laura L. Stine, and then lived in a rooming house in Kansas City, Kan., kept by Mr. and Mrs. Allen. The de-

fendant went to the rooming house to see Thomas and was escorted by Allen to the room occupied by Thomas, and found him in a stupor. The defendant then advised the landlord, Allen, to call the daughters, Mrs. Sweetin and Mrs. Stine, and have them come over and care for their father. The defendant then left the house and went over to a near-by restaurant and ate his dinner. The daughters were called by telephone as suggested, and within a half hour came over, and shortly after their arrival defendant came back to the rooming house and found his wife, Laura Stine, Mr. and Mrs. Allen, and a man named Long, in the Thomas room. Immediately upon entering the room he drew a revolver and began shooting. Two of the bullets fired by him struck Laura Stine and caused her death. When he began shooting, his wife ran over and took hold of him and begged him to quit. He beat his wife over the head with the gun and one of the bullets fired went through his wife's hat and one grazed the side of her face. After the shooting the defendant ran out of the room, down the steps, threw the gun into a trash can and ran away. The defendant had purchased the revolver a few days before the shooting. There was testimony that defendant had said that he would fix his wife and Laura Stine if they did not stay away from each other. Defendant had also stated that he had taken two drinks of whisky on the day of the homicide, one being shortly before the shooting.

In this appeal defendant assigns no errors except as to the instructions and mainly confines his complaints to instructions 21 to 26, inclusive. The charge given by the court was quite elaborate and carefully stated, and appears to cover quite fully all the issues in the case. In the twenty-first instruction, of which complaint is made, the court was dealing with the matter of intent. In previous instructions he had already defined the offenses included in the charge and had told the jury that every material ingredient of the charge must be proven by the state to the satisfaction of the jury beyond a reasonable doubt, before the defendant could be found guilty. He explained reasonable doubt, malice aforethought, stating that malice was a necessary ingredient of the crime of murder in either of the degrees, and must be proven to the satisfaction of the jury, beyond a reasonable doubt. He also explained the term "willful," as used in the instructions, and the premeditation essential to a conviction of murder in the first degree. As to intent he stated in instruction 21 that:

"The law presumes a person to intend the natural consequences of his acts intentionally done, and this presumption of law will always prevail unless, after a consideration of all the evidence bearing upon the point, you have a reasonable doubt of the existence of such intent. If, therefore, in this case you find beyond a reasonable doubt that the defendant did shoot Laura Stine as charged in the information and that the natural and ordinary consequences of such shooting would be the death of the said Laura Stine, then the presumption of the law is that the defendant did shoot said Laura Stine with the intention to kill her. This presumption, however, is not conclusive, and may be rebutted and overthrown by the evidence; and if, after a consideration of all the evidence, there is a reasonable doubt of the intent of the defendant to kill the deceased, in the minds of the jury, you cannot find the defendant guilty of the crime of murder in either degree."

Defendant complains of the phrase that "the law presumes a person to intend the natural consequences of his acts intentionally done," and states that the court used "intentionally" instead of "voluntarily" done. He says that the accused might in the stress of the circumstances decide the necessity of shooting in self-defense and then intentionally discharge the revolver at his assailant, in which case the criminal intent could not be imputed to him. As the case was submitted, the criticism of the instruction is without importance. In a previous instruction the court had correctly instructed the jury that so far as material in this case murder in the first degree is "any kind of willful, deliberate and premeditated killing," which is the statutory definition (R. S. 21-401), and in that connection the court had defined the terms "willful," "deliberate" and "premeditated." The jury were informed that "willful," as used in a charge of murder signifies an intention to kill and therefore the expression "intentionally done" was neither ambiguous nor inapt. It is a more comprehensive and stronger expression than voluntarily done. When the act is done intentionally with design and deliberation, it is in fact voluntarily done. Of course, the intent to kill was a necessary element in the conviction, and when it is shown to have been done willfully it means that it was intentional and not accidental or involuntary. In *State v. Sorter*, 52 Kan. 531, 34 Pac. 1036, it was decided that an instruction was not incorrect or prejudicial which provided—

"That a person is presumed to intend to do that which he voluntarily does do, and intends all the natural, usual and probable results of his own voluntary acts; and if the jury found that the defendant shot and killed the deceased, as charged in the information, and that the natural and ordinary consequences of such shooting would be the death of the deceased, then the pre-

sumption would be that the defendant shot with the intent to kill him." (Syl. ¶ 9.)

See, also, *State v. Dull*, 67 Kan. 793, 74 Pac. 235; *State v. Wilfong*, 114 Kan. 689, 220 Pac. 250. There is no valid ground to complain of instruction 21.

Complaint is made of instruction 22, which charged that—

"The defendant, Bert L. Sweetin, claims that in shooting the deceased, he acted in self-defense, believing that he was then in immediate danger of losing his life or receiving great bodily harm at the hands of the deceased. As to this defense, you are instructed that when a person is attacked by another in such a manner or under such circumstances as to furnish reasonable grounds for apprehending a design to take away his life or do him some great bodily harm, and there are reasonable grounds for believing that there is immediate danger of such design being accomplished, he may act upon such appearances and kill his assailant, if that be necessary, to avoid the apprehended danger; and his acts are to be judged by the jury in the light of all the circumstances disclosed by the evidence as they might reasonably have appeared to him at the time, and will under such circumstances be justifiable although it afterwards appear that such appearances were false and that there was in fact neither a design to do him serious injury nor danger that it would be accomplished. But before the jury can acquit the defendant on the ground of self-defense, it must appear from the evidence that the circumstances were such as to force the belief upon the mind of a reasonable person, in the same situation in which the defendant then was, that he was in imminent danger of losing his life or receiving great bodily harm at the hands of the deceased; this belief must be reasonable and such as a reasonable person would act upon, and the deceased at the time or immediately before the killing must have been in an apparent situation where she could immediately inflict injury upon the defendant."

It is urged that the court did not instruct the jury to acquit the defendant if they had a reasonable doubt that he was in imminent danger of losing his life or of receiving great bodily harm at the hands of the deceased, and that the court had said, before the jury can acquit on the ground of self-defense it must appear that the circumstances were such as to force the belief upon the mind of a reasonable person in the same situation that he was in, of the danger mentioned. It is urged that the jury should have been told in plain words to acquit if there were reasonable grounds for the belief or apprehension. The language of the instruction was the equivalent of telling the jury to acquit if reasonable grounds were given and apprehension was shown. There was no shifting of the burden of proof upon the defendant by the instruction as suggested by defendant. In another instruction the jury were informed that

it was incumbent on the state to prove every ingredient of the charge beyond a reasonable doubt, and further that the presumption of innocence goes with the defendant throughout the trial on every phase of the case, so that the state was not relieved from the burden of showing that the offense was committed notwithstanding the claim of self-defense. It is also said that the court did not couple with this defense a statement that the jury must be free from reasonable doubt as to whether reasonable grounds existed for fear that his life or personal safety was in danger. As to that feature of the case there was a general instruction that every element of the offense must be shown to the satisfaction of the jury beyond a reasonable doubt. This direction applied to every part of the case and it was unnecessary to repeat it in every paragraph of the instructions. Instructions are to be taken as a whole and not by dissection, and it is unnecessary to restate all the governing principles of the case in each rule treated.

Nor do we find any fault in the instruction in which the court, speaking of self-defense and of the fear of death or personal injury to defendant, said it must appear from the evidence that the circumstances were such as to force the belief on the mind of a reasonable person in the same situation that he was in imminent danger of losing his life or receiving great bodily harm. Similar language as to forcing belief was used in *State v. Horne*, 9 Kan. 119, 129, where it was said of such defense:

"Now the threats and circumstances must not only tend to lead to the belief, but they must force the belief upon the mind, and then the belief must be reasonable, and such as reasonable men act on."

See, also, *State v. Bohan*, 19 Kan. 28.

Instruction 23 complained of told the jury that if they found beyond a reasonable doubt that Laura Stine was killed by a shot from the pistol fired by the defendant, and that in determining whether defendant had reasonable grounds for believing himself to be in danger of losing his life or receiving great bodily harm, it was the duty of the jury to take into consideration any weapon Laura Stine had at the time, position of the parties, the attitude of the deceased toward the defendant at and prior to the shooting, the character of the assault upon the defendant, if any was made by the deceased, and all the facts and circumstances surrounding the transaction as they reasonably appeared to the defendant at the time.

It was added in that connection that it was not incumbent on the defendant to prove by a preponderance of the evidence that he had reasonable grounds for his fear and apprehension of the danger, but it was sufficient to justify his acquittal if from all the evidence the jury had reasonable doubt as to whether or not he did so believe and had reasonable grounds for so believing. Defendant says the court, instead of saying that the reasonable doubt would justify an acquittal, should have instructed that it was their duty to acquit under that showing. We think there could have been no misunderstanding of the instruction or that it would be the duty of the jury to acquit if they had a reasonable doubt on the question. A better form of expression would have been a direction to acquit if the reasonable doubt existed, but the expression used when taken in connection with the other instructions leaves no doubt in the minds of this court that the jury were not misled by the form used and that they understood that if they had a reasonable doubt of the guilt of the defendant by reason of his fear and apprehension, it was their duty to acquit. There is abundant evidence supporting the theory of the prosecution that defendant fired the shot that killed Laura Stine; that he had suggested that she and her sister be invited to the place of the shooting; that he returned to that place shortly after they arrived, and when they had come, he, armed with a pistol procured a few days before, began shooting as he entered the room where the deceased and others were assembled in caring for Thomas; that defendant had previously threatened to fix the deceased and Mrs. Sweetin, and there was also testimony the shot was aimed at the deceased, who was only a few feet from him at the time, and there was further evidence that he was not attacked by anyone before he began shooting. Defendant gave testimony in denial of some features of the transaction, but the testimony offered by the state is quite convincing and fully supports the verdict returned by the jury. The instructions of the court presented the defense made by defendant fully, and it carefully instructed the jury as to his rights under his theory of defense.

Other criticisms are made of instructions, but we do not find them to be material or to require special discussion. There was no error in the refusal of the instructions requested. The charge so far as they were appropriate to the case was well covered by the instructions given.

There is a further objection that the judge who sentenced the defendant was not the one who tried the case. It appears that Hon. Charles A. Miller, the regular judge of the division, became ill and unable to preside in court. Because of his illness and absence, the bar of the court elected Hon. T. F. Railsback to act as judge *pro tem.* during the absence of Judge Miller. Judge Railsback tried a number of cases, including the prosecution of the defendant. After the verdict defendant presented a motion for a new trial, which was argued at length before Judge Railsback, and at the close of the argument Judge Railsback approved the verdict and denied a motion for a new trial. After the motion for a new trial had been overruled, Judge Miller, who had recovered from his illness and returned to his judicial duties, was present in court and so Judge Railsback then retired from his position as judge *pro tem.* Judge Miller resumed the bench and presently defendant was called before the court for sentence. After stating to the defendant that he had been found guilty of murder and that his motion for a new trial had been overruled, the judge inquired if the defendant had anything to say why judgment should not be pronounced upon him. He indicated that he had nothing to say, but his counsel made an objection, stating that the defendant had not had a trial before a regularly constituted court and by due process of law. Over that objection Judge Miller then pronounced the sentence. We think the objection is without force. The evidence upon which the verdict rested was reviewed by the judge who tried the case and heard the evidence, and he decided that the evidence was sufficient to uphold the verdict, and that none of the grounds presented for a new trial could be sustained, and thereupon he approved the verdict. Doubtless he could have then imposed the sentence, but the regular judge having returned and being ready to assume his duties, Judge Railsback courteously retired and left the duty of fixing and pronouncing sentence to the regular judge. The penalty for the offense of which defendant was convicted is fixed by law and as the verdict had been approved and the motion for a new trial overruled, nothing was left for Judge Miller to do except the ministerial duty of pronouncing the sentence prescribed by law. But whether or not it was strictly a ministerial duty, it is clear that it was competent for the successor judge to take up and pronounce the sentence. In *Crippen v. Schnee,* 52 Kan. 202, 34 Pac. 793, where a judge had tried a case with a jury which had returned a general verdict, and also some

special findings, and there followed motions to set aside the general verdict and also the special findings of fact by the judge who tried the case, and then the legislature reorganized the judicial district which placed the county of trial in another district and under the jurisdiction of another judge, who took and disposed of the case, it was held that it was competent for the successor judge to render a judgment in the case.

Some other errors are assigned, but they are deemed to be immaterial.

Finding no material error in the record, the judgment is affirmed.