(931 P.2d 1250)

No. 73,734

STATE OF KANSAS, *Appellee*, v. JACKIE LEE WHITE, *Appellant*.

Opinion filed January 17, 1997.

*J. Patrick Lawless, Jr.*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Athena E. Andaya*, assistant district attorney, *Joan M. Hamilton*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before MARQUARDT, P.J., LEWIS and GREEN, JJ.

LEWIS, J.: A jury convicted defendant of the crimes of burglary and attempted theft. As a consequence, he was sentenced to a term of 34 months in prison and 12 months' post-release supervision. On appeal, he attacks both his convictions and his sentence.

Defendant denies having burglarized the house in question. He testified he was elsewhere when the crime was committed. The evidence to the contrary, however, was strong and compelling.

Larry Adams was an eyewitness to the crime. The dwelling burglarized by defendant was the home of Adams' mother. On the evening of the burglary, Adams was at his grandparents' house, which was across the street and in full view of his mother's residence.

Adams testified that at about 8 or 9 p.m., he observed defendant sitting against a building across the street. He thought it somewhat suspicious that anyone would be sitting on the street at that hour of night, and he kept an eye on defendant throughout the evening.

At one point, he looked out and defendant was nowhere to be seen. He was suspicious and went outside and walked over near his mother's home. His mother's bedroom was visible from where he was standing, and the curtains were open. He observed defendant inside the bedroom rummaging through a dresser. Adams yelled at defendant, who came out of the house onto the porch. Adams approached the porch, and an altercation ensued in which Adams hit defendant with a pool cue.

After Adams struck defendant with the pool cue, defendant ran and Adams went to his grandparents' home to get help. During this period of time, Adams testified, defendant was out of view for approximately 20 seconds. Soon, Adams and his grandfather chased defendant and located him running up a hill. They followed him. Adams testified that at one point he was within 2 feet of defendant.

After the police arrived, Adams identified defendant as the burglar, and defendant was arrested.

## EYEWITNESS INSTRUCTION

On appeal, defendant argues the trial court erred in not giving the jury an eyewitness instruction. Defendant did not request such an instruction.

The law relating to this issue is concisely stated in *State v. McIntyre*, 259 Kan. 488, 492-94, 912 P.2d 156 (1996):

"We have stated that a party may not assign as error the giving or failure to give an instruction unless he or she objects to or requests the instruction, stating the specific grounds for the objection. Absent such an objection or request, an appellate court may only reverse where the trial court's failure to give the instruction was clearly erroneous. *State v. Edwards*, 252 Kan. 860, 864-65, 852 P.2d 98 (1993). The failure to give an instruction is clearly erroneous only if the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility that the jury would have returned a different verdict.

"In determining whether there is a question about the reliability of eyewitness identification, this court in *State v. Warren*, 230 Kan. 385, 390, 635 P.2d 1236 (1981), identified five factors to be considered when evaluating the testimony of an eyewitness. These included (1) the opportunity of the witness to view the defendant at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior descriptions of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation. The *Warren* court examined these factors in determining whether an instruction was necessary. 230 Kan. at 397-98.

. . . .

"Other factors not mentioned by the *Warren* court but highlighted by PIK Crim. 3d 52.20 (1995 Supp.), the instruction regarding eyewitness testimony, include the emotional state of the witness and whether the witness had observed the alleged perpetrator on an earlier occasion."

It is apparent in this case that the eyewitness identification of defendant was a vital and critical portion of the prosecutor's case: "In any criminal action in which eyewitness identification is a critical part of the prosecution's case *and there is a serious question about the reliability of the identification*, a cautionary instruction should be given advising the jury as to the factors to be considered in weighing the credibility of the eyewitness identification testimony." (Emphasis added.) *State v. Richmond*, 258 Kan. 449, Syl. ¶ 4, 904 P.2d 974 (1995).

The record on appeal does not suggest that a serious question about the reliability of the identification existed. We have examined the evidence in light of the five factors identified in *State v. Warren*, 230 Kan. 385, 390, 635 P.2d 1236 (1981), and all five of those factors support the reliability of the identification of defendant as the burglar.

In addition to the above, even if it was error to fail to give the instruction, that error will not warrant a reversal unless it was clearly erroneous. An error is clearly erroneous only if we conclude that but for the error there would have been a real possibility of a different verdict. We cannot reach that conclusion. The identification testimony of Adams was credible and positive, and the failure to give the instruction would not, in our judgment, have created the possibility of a different verdict. The failure to give the eyewitness instruction in this case was not clearly erroneous.

## CRIMINAL HISTORY

Defendant argues the trial court erred in computing his criminal history. The basis of that assertion is that the State failed to produce proper evidence of criminal history and that the trial court erred in admitting what evidence was produced.

The State argued that defendant had three prior person felonies, giving him a criminal history score of A. Defendant objected to two of the convictions shown, and the trial court held a hearing to determine defendant's criminal history under K.S.A. 21-4715(c). After the hearing, the trial court held that the State had proven the two convictions in question.

The State argues initially that defendant failed to raise a sufficient objection on criminal history to require it to come forward with any evidence other than the presentence investigation (PSI) report. We disagree.

K.S.A. 21-4715(c) provides:

"Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet. The state shall have the burden of producing further evidence to satisfy its burden of proof regarding any disputed part, or parts, of the criminal history and the sentencing

judge shall allow the state reasonable time to produce such evidence to establish the disputed portion of the criminal history by a preponderance of the evidence."

In this case, defendant filed a written notice objecting to the criminal history shown in the PSI report. In his objection, he simply stated that he "objects to the crimes numbered 1-5 and 9-15 of the Kansas Criminal History Worksheet." At the hearing, defendant specifically raised the objection that the documentation of the two California convictions in question was insufficient.

The State argues this objection was not sufficient. We disagree.

A defendant is not required to deny that he committed the crimes shown on his criminal history before the State is put to its burden of proof. In *State v. Tolliver*, 22 Kan. App. 2d 374, 381, 916 P.2d 725 (1996), we held that "there is no provision in the KSGA [Kansas Sentencing Guidelines Act] which *requires* a defendant to come forward and provide the State with an accurate criminal history. There also is no provision in the KSGA which prohibits a defendant from misrepresenting his or her identity during a presentence investigation."

The question in this case is whether defendant raised a sufficient objection to his criminal history to put the State to its burden of proof. We hold that he did. Defendant's written objection, coupled with the specific objection raised at the hearing, was sufficient to require the State to prove its allegations. This case is factually similar to *State v. Perez*, 21 Kan. App. 2d 217, 220, 897 P.2d 1048 (1995), and we rely on that opinion in reaching our decision.

We hold that where a defendant has generally objected to his or her proposed criminal history in writing and subsequently raises specific objections at the hearing to determine criminal history, the requirements of K.S.A. 21-4715(c) are complied with and the State is required to prove its allegation of criminal history.

We do not decide whether a simple objection in the nature of a general denial is sufficient in and of itself. That is not what this case is about, and that question will be answered if and when it becomes relevant. Our decision is rendered on the sufficiency of a general denial in writing, which is coupled with specific objections lodged at the hearing.

The more compelling questions involve whether proof offered by the State to prove two prior California convictions was admissible and, if so, whether the evidence offered by the State was sufficient to prove defendant's prior felony convictions.

The State submitted that defendant had two prior juvenile adjudications for rape and kidnapping in California in 1962. The principal evidence used to prove these adjudications existed consisted of two letters from the supervisor of master files of the California Youth Authority. These two letters are identical; one is dated April 11, 1994, and the other April 22, 1994. The April 22 letter has attached to it a copy of the records of the California Youth Authority. The letters in question are on the California Youth Authority letterhead and bear the seal of that authority. They are signed by an individual who purports to be the supervisor of master files of the California Youth Authority. Insofar as they are relevant to the issue in this case, the two letters state the following:

"Our records indicate that the subject [Jackie Lee White] was committed to the Youth Authority by the Juvenile Court of Los Angeles County on December 3, 1962 for Kidnapping and forcible rape and was discharged from the Youth Authority on March 15, 1968. Since the subject's commitment ended in 1968, we are unable to supply you with the regular material, as under the present policy, we do not retain case files on discharged wards beyond the period of seven years."

Neither letter is certified, attested, or authenticated and neither are the attachments. Neither letter is accompanied by a certificate stating that the officer who signed the letter has custody of the records. What is apparent from reading the records is that these letters and the record attached to the letter of April 22, 1994, are the only evidence which currently exists of defendant's 1962 adjudications.

Defendant argues that the documents in question are inadmissible as evidence of defendant's criminal history.

One thing which is clear is that unless the documents are admissible under K.S.A. 60-465, they are hearsay and, as such, should not have been admitted into evidence.

The question of the admissibility of the documents in question is governed by K.S.A. 60-465, which provides in pertinent part:

"A writing purporting to be a copy of an official record or of an entry therein, meets the requirements of authentication if (1) the judge finds that the writing purports to be published by authority of the nation, state or subdivision thereof, in which the record is kept; or (2) evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record or entry; or (3) the office in which the record is kept is within this state and the writing is attested as a correct copy of the record or entry by a person purporting to be an officer, or a deputy of an officer, having the legal custody of the record; or (4) if the office is not within the state, the writing is attested as required in clause (3) of this section and is accompanied by a certificate that such officer has the custody of the record. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of the office."

This court has dealt with the general question of whether evidence is admissible under 60-465 in order to prove criminal history. In *State v. Strickland*, 21 Kan. App. 2d 12, 14-15, 900 P.2d 854 (1995), we held:

"While the documents the State offered to establish the Oklahoma felony conviction were certified or 'attested' as correct copies by the court clerk for Grant County, Oklahoma, in compliance with K.S.A. 60-465(3), they were not accompanied by the certificates required under K.S.A. 60-465(4). In addition, the trial court did not make findings sufficient to meet the requirements for authentication under K.S.A. 60-465(1) or (2). Accordingly, the documents did not meet the authentication requirements of K.S.A. 60-465 and, therefore, were not admissible under K.S.A. 60-460(o).

"We hold that when the State attempts to establish a defendant's criminal history in a hearing pursuant to K.S.A. 1994 Supp. 21-4715 using copies of official court documents, those documents must meet the authentication requirements under K.S.A. 60-465 in order to be admissible as an exception to the rule against hearsay under K.S.A. 60-460(o). For copies of documents from Kansas courts, certification will suffice to meet the authentication requirements under K.S.A. 60-465(3). Copies of documents coming from courts of other states need to be certified or 'attested' and, in addition, accompanied by the certificate required by K.S.A. 60-465(4) in order to meet the requirements for authentication. A similar rule has been applied when proving prior convictions in proceedings to invoke the enhanced penalty provisions of the Habitual Criminal Act, K.S.A. 1994 Supp. 21-4504. See *State v. Baker*, 237 Kan. 54, 55, 697 P.2d 1267 (1985); *State v.*

*Crichton*, 13 Kan. App. 2d 213, 216-17, 766 P.2d 832 (1988), *rev. denied* 244 Kan. 739 (1989)."

We conclude the documents in question would not have been admissible under *Strickland*. That case dealt with a journal entry offered by the State to prove criminal history which was "certified or attested." However, the document in question was not admissible because it was not accompanied by the certificate required under K.S.A. 60-465(4). *Strickland* rested on our interpretation of subsection (4) of K.S.A. 60-465.

The State argues that *Strickland* does not apply in this case because the trial court found the documents admissible under K.S.A. 60-465(1) or (2).

We agree with the State's contention that subsections (1) and (2) of 60-465 provide an alternate method of proving authentication. The question we must decide is whether these documents were authenticated under either subsection (1) or (2) of the statute.

The trial judge, in admitting the letters into evidence, said:

"Now, unless somebody can point out any other pertinent provisions of the statute, it appears that the type of proof that is required is not specified by the statute. In other words, the statute is silent. It's my understanding from the various seminars that I have attended on the sentencing guidelines, that this was left to the Court's own determination under standard rules of evidence and under standard forms of proof used in previous cases. And, therefore, *certified copies or authenticated copies, while a high form of proof which would normally be satisfactory, are not the only forms of proof the Court can consider.* That's my understanding of the information provided in the official seminars that have been given throughout the state on sentencing guidelines. And it appears that the statute does not require a specific form of proof, it only provides that the State has the burden of producing further evidence and must prove by the preponderance of the evidence the aspects of the criminal history.

"So, my view is any competent evidence sufficient to establish criminal history, and based upon my view of the statute, the Court would admit the exhibits at this time." (Emphasis added.)

There is nothing in the trial court's finding to satisfy subsection (1) of 60-465. There is, in this case, no explicit finding by the judge that the letters were published by the authority of the State of California.

Our focus, then, is on subsection (2). We note at this point that we have serious doubts as to whether the trial court in this case was even thinking about 60-465 when it made the comments set forth above. Those comments seem to be related more to the sufficiency of the evidence than they do to the admissibility of the documents in question.

K.S.A. 60-465(2) provides that a document will meet the requirements of authentication if "evidence has been introduced sufficient *to warrant* a finding that the writing is a correct copy of the record or entry." (Emphasis added.) As we read the wording of subsection (2), it does not appear to require that the trial court had made such a finding. That subsection appears to require only that sufficient evidence had been introduced to *warrant* such a finding. Under our interpretation, the fact that the trial court did not make a specific finding relating to subsection (2) does not mean we cannot determine on appeal whether the evidence was admissible under subsection (2).

Before applying 60-465 to the issue at hand, we must first determine whether the two letters and the attachment come within the scope of the statute. That statute deals with "[a] writing purporting to be a copy of an official record or of an entry therein." The question, then, is whether these letters and the attachment are writings purporting to be copies of an official record or of entries therein.

We conclude that the attachment to the letter of April 22, 1994, does purport to be a copy of an official record. It purports to be a copy of the "Register of Actions—Youth Authority, State of California." That document, in and of itself, is certainly competent evidence that defendant was adjudicated a juvenile by reason of having committed the crimes of kidnapping and rape in 1962. The letters themselves purport to contain information from the official records of the Youth Authority. The contents of those letters appear to us to be a recitation of what is shown on the official records of the Youth Authority. It does not appear to us to be stretching the meaning of the statute to conclude that the two letters and the attachment to the letter of April 22, 1994, fall within the ambit of the writings referred to by K.S.A. 60-465. Even if there is some

question as to whether the letters themselves come within the ambit of that statute, there is no question that the attachment to the letter of April 22 purports to be a copy of the official records of the California Youth Authority. We hold that the writings in question qualify as writings under K.S.A. 60-465.

The next question is whether there was evidence introduced sufficient to *warrant* a finding that the letters were correct copies of information from the California Youth Authority. We hold that the evidence was sufficient to warrant such a finding.

The letters are on the California Youth Authority letterhead, and each bears the seal of that authority. The information in the letters is also contained in the Kansas PSI report. In addition, there is testimony by the presentence investigator. The presentence investigator in this case testified as to the process she followed in completing the PSI report. She testified that in compiling the defendant's PSI report, she found the information concerning the California kidnapping and rape adjudications in a federal PSI report, which was prepared as a result of defendant's conviction of a federal crime in 1977. She followed that federal PSI report to the source and obtained the materials now being examined.

We do not have a denial by defendant that he was adjudicated a juvenile as shown by the records in question. There is no evidence in the record which indicates that defendant was not adjudicated a juvenile in the state of California in 1962, as shown by the evidence in question. We hold that the evidence produced in this case was sufficient to warrant the finding required by K.S.A. 60-465(2). Accordingly, we hold that the evidence in this case was admissible under K.S.A. 60-465(2).

The final question is whether the evidence submitted by the State was sufficient to prove that defendant's criminal history included the two California adjudications under discussion. K.S.A. 21-4715(a) provides that criminal history is to be determined by a "preponderance of the evidence at the sentencing hearing by the sentencing judge." We conclude that the evidence produced in this case was sufficient to show, by a preponderance of the evidence, that defendant was adjudicated a juvenile offender in California in 1962 by reason of having committed the crimes of kidnapping and

rape. We hold there is no error in this case in the determination of defendant's criminal history.

In view of our decision on the issue discussed above, we do not reach the other issues raised on appeal.

Affirmed.