(9 P.3d 1273)

No. 79,079

STATE OF KANSAS, *Appellee*, v. FRANKIE BOYD, *Appellant*.

Opinion filed August 25, 2000.

*Daniel Estes* and *Mary D. Prewitt*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Sheryl L. Lidtke*, assistant district attorney, *Nick A. Tomasic*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before LEWIS, P.J., PIERRON, J., and DAVID W. KENNEDY, District Judge, assigned.

PIERRON, J.: Frankie Boyd appeals his convictions for four counts of aggravated indecent liberties with a child, two counts of aggravated criminal sodomy, and one count of sexual battery.

At trial, the State sought to introduce evidence showing that in 1983 Boyd was charged with having sexual intercourse with a 14-year-old niece in Wyoming. Boyd objected, arguing that the documents from Wyoming were not properly authenticated. The trial court allowed testimony about the incident and allowed the documents to be entered into evidence.

During the trial, Judge Burdette became ill. Judge Sieve stepped in and presided over the trial. Boyd objected and moved for a mistrial. The motion was denied. Judge Sieve stated that if the need arose, he would have the court reporter read back testimony relevant to any contested legal issues. After the close of testimony, but before the closing arguments and jury instructions were given, Judge Burdette returned to preside over the trial. Boyd was convicted on all counts.

In his initial appeal to the court of appeals, Boyd raised five issues: (1) sufficiency of the evidence of "force or fear" to support a conviction of aggravated criminal sodomy; (2) failure to instruct the jury on indecent liberties with a child; (3) violation of his Sixth Amendment right to assistance of counsel; (4) violation of his Sixth Amendment right to a fair trial and due process; and (5) error in admitting evidence of a previous Wyoming conviction for a similar crime. This court addressed the sufficiency of the evidence issue and affirmed. The court dismissed the remaining four issues, holding that Boyd's notice of appeal was not sufficient to confer jurisdiction.

The Kansas Supreme Court accepted Boyd's petition for review and affirmed in part, reversed in part, and remanded to the Court of Appeals with directions. The Supreme Court held that Boyd's notice of appeal, which stated that he "appeals from his conviction in the above captioned matter," was sufficient to give the Court of Appeals jurisdiction to hear issues other than the sufficiency of evidence question, and that the Court of Appeals should have addressed Boyd's evidentiary and procedural claims. Consequently, we now consider the four remaining issues of Boyd's appeal.

First, Boyd argues the trial court improperly admitted hearsay evidence from Wyoming that was not properly authenticated.

Boyd contests two pieces of evidence. The first is a copy of a document entitled "Deferred Prosecution." It ordered Boyd to undergo whatever counseling was deemed necessary by the Southeast Mental Health Center. The agreement also ordered Boyd to not have sexual relations with anyone younger than 17. The second document appears to be an affidavit of probable cause. The statement at the bottom of the page indicates that in 1983 a 14-year-old female told police that she had sexual intercourse with Boyd, her uncle by marriage. Boyd alleges that neither of these documents were properly authenticated, rendering both of them inadmissible hearsay.

Evidence that a person committed a crime or civil wrong is admissible if relevant to prove a material fact such as motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. K.S.A. 60-455.

Evidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter asserted, is hearsay evidence and inadmissible except: "Subject to K.S.A. 60-461 and amendments thereto, (1) if meeting the requirements of authentication under K.S.A. 60-465 and amendments thereto, to prove the content of the record, a writing purporting to be a copy of an official record or of an entry therein." K.S.A. 60-460(o).

K.S.A. 60-465 states that a writing purporting to be a copy of an official record meets the requirements of authentication if:

"(1) [T]he judge finds that the writing purports to be published by authority of the . . . state . . . in which the record is kept; or (2) evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record or entry; or (3) the office in which the record is kept is within this state and the writing is attested as a correct copy of the record . . . by a person purporting to be an officer, or a deputy of an officer, having the legal custody of the record; or (4) if the office is not within the state, the writing is attested as required in clause (3) of this section and is accompanied by a certificate that such officer has the custody of the record."

An authenticated copy of a journal entry is admissible under K.S.A. 60-455. *State v. Johnson*, 204 Kan. 62, 63, 460 P.2d 505

(1969). The question before us is whether a nonauthenticated copy of a probable cause affidavit is similarly admissible. Interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

The documents introduced at Boyd's trial are clearly photocopies. The seal that is present is also a photocopy. Additionally, there are no certificates from the records officer in Wyoming.

This court had the opportunity to analyze K.S.A. 60-465 in *State v. White*, 23 Kan. App. 2d 363, 931 P.2d 1250, *rev. denied* 261 Kan. 1089 (1997). In that case, the State sought to introduce evidence of prior felony convictions to be used in computing criminal history. The evidence consisted of a copy of a record, signed by an individual purporting to be the supervisor of master files for the office that was sending the record. The document was not certified, attested, or authenticated and was not accompanied by a certificate. This court held the record was clearly inadmissible under K.S.A. 60-465(4). The State maintained the document was admissible under another part of the statute. The court agreed and held that subsections (1) and (2) of K.S.A. 60-465 provide alternate methods of proving authentication. 23 Kan. App. 2d at 370.

K.S.A. 60-465 allows a document to be authenticated if the judge finds that the writing was published with authority. Judge Burdette admitted the copies of the Wyoming documents, stating, "I find the documents even though they are photocopies to have the relevant court and notary documentation to be admitted as exhibits in this court." The judge viewed the documents and determined that they bore sufficient indicia of authenticity to be admitted.

K.S.A. 60-465 allows a document to be authenticated if evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record. The documents in question are stamped with the Laramie County seal. They also bear another stamp, signed by the county judge, which states: "I hereby certify that I am the duly and qualified elected Judge, in and for Laramie County, State of Wyoming and that the foregoing is a true and complete copy of the original [order/complaint] on file in my office." The seals present on these documents provide evidence suf-

ficient to warrant a finding that the records are accurate copies. Their reliability is bolstered by testimony given at trial. A police officer testified that Boyd stated he had been sexually involved with a 14-year-old niece by marriage. There was no objection to the introduction of this statement. In fact, Boyd stipulated to its admissibility. This statement supports the authenticity of the records from Wyoming. Boyd does not actually claim that the exhibits are incorrect in what they relate. The documents were properly admitted.

Even if the documents were not properly certified, their admission was harmless error. An error is harmless if this court can declare, beyond a reasonable doubt, that the error had little, if any, likelihood of changing the result at trial. *State v. Cox*, 258 Kan. 557, 565-66, 908 P.2d 603 (1995). The jury heard about Boyd's prior history when Detective James testified about the statements Boyd had made. The result of the trial would have been the same had the evidence not been admitted. Thus, the error was harmless.

Boyd next argues the substitution of Judge Sieve during the jury trial violated his right to a fair trial.

Two police officers and the victim's boyfriend testified on the first day of trial. After the first day of trial, Judge Burdette became ill and was unable to continue. Judge Sieve stepped in and continued the trial through the evidence portion of the trial. Before Judge Sieve recommenced the trial, Boyd objected to the substitution and moved for a mistrial. The motion was denied. Judge Sieve stated that if it became necessary, he could have the court reporter read back the testimony of witnesses that were present on the first day of trial.

At the close of the State's case, Boyd moved for a directed verdict. The arguments in favor of a directed verdict were based entirely on evidence heard by Judge Sieve. Boyd's motion was denied.

Judge Burdette returned the next morning. Boyd renewed his motion for a mistrial. Judge Burdette stated that as long as Judge Sieve was available to answer questions, there was no prejudice to Boyd. The motion was denied. The jury heard closing arguments and then Judge Burdette gave the jury instructions.

After the guilty verdict, Boyd moved for a new trial, arguing that the substitution of Judge Sieve was prejudicial. Boyd claimed prejudice since it was necessary for the court to be aware of previous witnesses' testimony when ruling on evidence as it related to other witnesses and that was not possible where the substituting judge has not heard all the evidence. Judge Burdette told Boyd that he had spoken with Judge Sieve and had read his trial notes before returning to the bench. Judge Burdette felt that Boyd was given a fair trial. The motion for a new trial was denied.

The substitution of judges is governed by K.S.A. 43-168, which states:

"If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, another judge sitting in or assigned to the court in which the action is being tried, *upon certifying that he has familiarized himself with the record of the trial*, may proceed with and finish the trial." (Emphasis added.)

This statute was patterned after Fed. R. Crim. Proc. 25(a). The Advisory Committee Notes for this rule indicate that its passage was prompted by the increasing number of long criminal trials. Kansas courts have not yet analyzed 43-168.

While 43-168 requires that a substituted judge must be familiar with the record of the trial and must certify the same, how to specifically do so is not detailed in the statute.

Kansas cases in this general area are not of much assistance due to factual distinctions. See, *e.g., Peterson v. State*, 203 Kan. 959, 457 P.2d 6 (1969); *State v. Sweetin*, 134 Kan. 663, 8 P.2d 397 (1932); *State v. Wood*, 118 Kan. 58, 233 Pac. 1029 (1925).

The appropriateness of a substitution of a judge is partially dependent on the time of substitution. A majority of jurisdictions agree that a new judge may always be introduced before the presentation of evidence begins. *People v. McCline*, 442 Mich. 127, 499 N.W.2d 341 (1993); accord *Jones v. State*, 57 Ala. App. 275, 327 So.2d 913 (1975).

It is more difficult to substitute a judge once witness testimony begins. However, a criminal defendant is not denied any constitutional right when the original trial judge is replaced by another judge who is thoroughly familiar with the record. See *People v.*

*Thompson*, 158 Misc. 2d 397, 409-10, 601 N.Y.S.2d 418 (1993). For example, in *Commonwealth v. Carter*, 423 Mass. 506, 669 N.E.2d 203 (1996), a new judge was substituted for the original trial judge after 2 days of testimony. The new judge, complying with a statute identical to the one in Kansas, certified that he had carefully reviewed all the pleadings and had read the actual transcript of all the witnesses' testimony. The substitution was upheld on appeal. 423 Mass. at 513-14.

A number of courts, including Kansas, have reached the conclusion that there can be no prejudice to the defendant where the successor judge performs only ministerial acts. See *Peterson v. State*, 203 Kan. 959, 457 P.2d 6 (1969) (substitute judge only received verdict; no prejudice shown); see also *Burrage v. State*, 101 Miss. 598, 58 So. 217 (1912) (in Mississippi, the reception of the jury verdict is a ministerial act, rather than a judicial act); *United States v. Pfingst*, 477 F.2d 177 (2d Cir. 1973); Annot., 34 A.L.R.2d 683. However, substitution of a judge midtrial who hears a substantial amount of evidence is clearly not a ministerial act.

Several jurisdictions have found reversible error where the substitute judge failed to become familiar with the record. Annot., 45 A.L.R. 5th 591, 631; see, *e.g.*; *Hood v. State*, 334 Md. 52, 637 A.2d 1208 (1994); *State v. Bilbrey*, 858 S.W.2d 911 (Tenn. 1993). Other courts have found under various fact situations that there was not reversible error. See *McIntyre v. State*, 266 Ga. 7, 463 S.E.2d 476 (1995); *State v. Kramer*, 809 S.W.2d 50 (Mo. App. 1991); and *Jimenez v. State*, 838 S.W.2d 661 (Tex. App. 1992).

The record indicates that neither Judge Burdette nor Judge Sieve were aware of K.S.A. 43-168 and apparently neither were the State nor the defense. It is clear that neither judge took the necessary steps to fully familiarize himself with witness testimony. In fact, both judges clearly stated that they found it unnecessary to have the court reporter read back the record. Judge Sieve stated that he "could have the reporter read back to me those parts that are relevant to the legal issue [raised]." When Judge Burdette returned, he told counsel that he would consult with Judge Sieve if it became necessary. Judge Burdette eventually met with Judge

Sieve and looked over his trial notes. Judge Sieve also "went over" the evidence with Judge Burdette.

The substitution of Judge Sieve for Judge Burdette was not done correctly, and neither was Judge Burdette's return to the bench. Although not citing K.S.A. 43-168, Boyd objected to the substitution and did not acquiesce. K.S.A. 43-168 clearly establishes that a substitute judge must certify that he or she is familiar with the record. Both Judge Burdette and Judge Sieve clearly stated that they would read the record only if it became necessary at a later date.

We agree with the general tenor of cases from other jurisdictions that to become "familiar" with a trial record, the substituting Kansas judge should read or have read to him or her the testimony that has been presented and view the exhibits that have been admitted. Once this has been done, the judge should state for the record that he or she certifies that this has occurred. These actions will certainly satisfy statutory and constitutional standards and require no further action to demonstrate readiness to assume the trial of the case.

We believe that the appropriate response by a reviewing court, if for some reason this is not done, is to assume prejudice unless the record shows beyond a reasonable doubt that no significant prejudice occurred. Although failure to follow the above-mentioned process will lead to a presumption of error, it will not automatically require reversal. Following this process will obviate the need to make a determination of no prejudice.

Continuity in the trial of a case is an important value. The "tag team" approach should, of course, be avoided.

In the instant case, Boyd did not claim in his brief and had nothing to offer at oral argument to support the proposition that he had been prejudiced in any way by the imperfect substitution process. We find no prejudice beyond a reasonable doubt. We therefore affirm on this issue.

Next, Boyd argues there was insufficient evidence to support his convictions for aggravated criminal sodomy. The Supreme Court affirmed our decision on the sufficiency of the evidence. Consequently, we will not again address the issue.

Boyd further argues the trial court erred in failing to instruct the jury on the lesser included offense of indecent liberties with a child. Boyd did not object to the omission of the instruction at trial.

K.S.A. 21-3107(3) states, in part:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced."

This duty arises whether or not the defendant requests the instruction at trial. *State v. Sanders*, 258 Kan. 409, 413, 904 P.2d 951 (1995). Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. The duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at trial is such that the defendant might have reasonably been convicted of the lesser offense. *State v. Torrance*, 22 Kan. App. 2d 721, 728, 922 P.2d 1109 (1996).

Under specific portions of K.S.A. 21-3503, indecent liberties with a child can be a lesser included offense of aggravated indecent liberties with a child pursuant to K.S.A. 21-3504. All the elements to sustain a conviction under K.S.A. 21-3503 are found within the provisions of K.S.A. 21-3504(a)(2). The only additional element for aggravated indecent liberties with a child is lack of consent.

The question presented is whether there was evidence produced at trial that could have reasonably been used to support a finding of guilty on the crime of indecent liberties with a child. Boyd did not testify at his trial, and the defense did not present any evidence. The main evidence against Boyd came from the victim's testimony. She stated that Boyd's touches made her feel "uncomfortable." The victim also testified she had asked Boyd why he was doing it and she had asked him to stop. There was no evidence presented that could reasonably be construed by the jury to find that the victim had consented to the touching or fondling.

Boyd claims since the State never directly questioned the victim concerning consent, the record lacks direct evidence that she did not consent. With evidence to the contrary, and absent any evi-

dence that the victim had consented to the acts, the trial court had no duty to instruct the jury on the crime of indecent liberties with a child. We find no reversible error concerning the lack of a lesser included instruction on indecent liberties with a child.

Last, Boyd argues the trial court violated his constitutional rights by ignoring his motion to dismiss counsel.

Boyd filed a motion to dismiss counsel approximately 6 weeks before the start of his trial. The pro se motion was received by the clerk's office. A motions hearing was held approximately 1 month before trial. Boyd attended the hearing, represented by his court-appointed attorney. Boyd's motion was not discussed. On appeal, Boyd argues that the trial court's failure to dispose of the motion violated his Sixth Amendment right to counsel.

There is nothing in the record to indicate that Boyd ever objected to the appearance of his trial counsel. Boyd appeared with his attorney at the motions hearing, the jury trial, the motion for new trial, and at sentencing. He had ample opportunity to object to the presence of his attorney. Also, an issue not presented to the trial court, as is the case here, will not be considered for the first time on appeal. *State v. Gardner*, 264 Kan. 95, 106, 955 P.2d 1199 (1998). Thus, Boyd's argument must fail.

Affirmed.

LEWIS, J., concurring in part, dissenting in part: I agree with the majority on all issues except that concerning the substitution of judges. I do not agree with the majority decision on that issue and dissent.

It is very obvious, and the majority so admits, that neither Judge Sieve or Judge Burdette complied with K.S.A. 43-168. Apparently, neither judge was aware of the statute in question. I do not fault either judge for not being cognizant of the statute; I had never seen or heard of it prior to this case. Nonetheless, it does exist and must be reckoned with.

The majority finds that neither trial judge complied with the statute but concludes the noncompliance was nothing more than "harmless error." Their opinion would require a defendant to somehow show that actual prejudice occurred due to the judges'

failures to comply with the statute. As much as I would prefer that approach, I am unable to agree.

If we label the failure to comply with 43-168 simply harmless error, I believe we have effectively repealed the statute. We have, in the past, covered up violation after violation of K.S.A. 60-455 as "harmless error," and I believe that statute has become largely meaningless. A defendant can seldom, if ever, show actual prejudice in an error of this nature. If a similar error occurred with a jury, we would reverse the conviction in a nearly summary fashion and no showing of actual prejudice would be required.

As I read 43-168, it provides that a substitute judge may "proceed with and finish the trial" *after* he or she has certified "that he [or she] has familiarized himself [or herself] with the record of the trial." I would suggest that we can only construe this to mean that a judge who has not complied with the statute may *not* proceed with and finish the trial.

It seems to me obvious in the extreme that if Judge Sieve or Judge Burdette failed to comply with the statute, neither was authorized to proceed with or finish the trial. If there was no authorized trial judge presiding, the trial was a nullity and the verdict cannot stand.

It is not for me to determine the wisdom or propriety of the statute in question. Our job is to apply the law as written by the legislature.

I agree with those courts which hold that when the substitute judge fails to become familiar with the record, under a statute such as we have, the error is reversible as a matter of law.