NOT DESIGNATED FOR PUBLICATION

No. 125,488

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DUSTIN STOUGHTON SULLIVAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Barton District Court; CAREY L. HIPP, judge. Submitted without oral argument. Opinion filed March 15, 2024. Sentence vacated and case remanded with directions.

*Adam D. Stolte*, of Stolte Law, LLC, of Overland Park, for appellant.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before ISHERWOOD, P.J., GREEN and PICKERING, JJ.

ISHERWOOD, J.:  Dustin Stoughton Sullivan was charged with possession of methamphetamine with intent to distribute at least 3.5 grams but less than 100 grams of methamphetamine and, in a separate case, faced charges for possession with intent to distribute at least 1 gram but less than 3.5 grams of methamphetamine, alongside a charge for failing to possess the required tax stamp. The cases were consolidated for trial and the jury returned a guilty verdict for each offense. At sentencing, the district court assigned Sullivan's full criminal history score to the primary offense in each case and imposed the mitigated term from the applicable grid box for each offense. Sullivan appeals and suggests the district court committed two errors that call the validity of his sentence into

1

question: (1) its failure to inquire and appoint new counsel when Sullivan expressed dissatisfaction with his attorney at the conclusion of his sentencing hearing, and (2) its application of Sullivan's full criminal history score to both primary offenses in his two consolidated cases. Following a thorough review of the record and controlling legal principles we find the court had no duty to inquire further into Sullivan's postsentencing complaint but did err in applying Sullivan's full criminal history to both of his consolidated cases. Accordingly, we vacate Sullivan's sentence and remand his case for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

In late 2019, Great Bend law enforcement officers initiated a narcotics investigation focused on Sullivan. Their efforts ultimately gave rise to criminal charges filed against him in two separate cases. In 2019-CR-471 (2019 case), Sullivan was charged with one count of distributing at least 3.5 grams but less than 100 grams of methamphetamine, in violation of K.S.A. 2019 Supp. 21-5705 (a)(1), (d)(3)(C). In 2020-CR-123 (2020 case), the State charged Sullivan with one count of distributing at least 1 gram but less than 3.5 grams of methamphetamine, in violation of K.S.A. 2019 Supp. 21-5705 (a)(1), (d)(3)(B), and one count of possession of a controlled substance without tax stamps, in violation of K.S.A. 79-5204. The two cases were later consolidated for trial.

The case proceeded to a jury trial and, after three days of receiving evidence, the jury returned guilty verdicts on all counts in both cases. At sentencing, the district court inquired whether Sullivan was satisfied with the representation he received from his retained counsel, Donald E. Anderson, and if he wanted Anderson to continue representing him. Sullivan responded affirmatively to both questions. The district court then found a criminal history score of C for the single offense in the 2019 case, distribution of at least 3.5 grams but less than 100 grams of methamphetamine, a severity level 2 drug felony. Neither party objected to that score. The district court announced the

2

sentencing range, then afforded both parties the opportunity to argue in support of their respective sentencing recommendations, at which time Sullivan's counsel requested a dispositional departure. The district court then asked Sullivan if there was anything he wanted to tell the court before it pronounced his sentence and Sullivan declined this opportunity. The district court denied Sullivan's departure request and sentenced him to the mitigated term of 117 months in prison followed by 36 months of postrelease supervision.

The district court then addressed the 2020 case where it again found a criminal history score of C for the primary offense, distribution of at least 1 gram but less than 3.5 grams of methamphetamine, a severity level 3 drug felony, and a criminal history score of I for the tax stamp offense, a severity level 10 nonperson felony. Neither party objected to the criminal history scores. Again, the district court stated the sentencing range for each count and asked for the parties' recommendations. It also gave Sullivan the opportunity to address the court before his sentence was pronounced but he opted to again stand silent. For the primary offense of distribution of methamphetamine, the district court sentenced Sullivan to the mitigated term of 65 months in prison and 36 months of postrelease supervision. For the additional offense of no drug tax stamp, the district court sentenced Sullivan to the mitigated term of 5 months in prison with 12 months of postrelease supervision, and ordered the two terms to run consecutively, for a total of 70 months in prison. However, the district court ordered the overall sentence in the 2020 case to run concurrently with that imposed in Sullivan's 2019 case, for a total controlling sentence of 117 months in prison.

After the district court pronounced the sentences in both cases, Sullivan interjected:

> "I probably need to get another lawyer or something. I think I need to get another lawyer. He never told me I'd get that much time if I lose a jury trial. Someone—I need to get

3

another lawyer. I'm not—I don't care about the—he didn't do good, I don't think. He didn't tell me what the full sentence would be. Ten years and stuff like that for losing a jury trial? I never knew nothing about that."

The district court explained that it had already pronounced the sentences and that Sullivan would have to explore an appeal or a postconviction remedy.

Sullivan now brings his case to this court for a determination of whether the district court committed errors which necessitate that he be resentenced.

LEGAL ANALYSIS

*The district court did not have a duty to inquire into the concern Sullivan expressed at the conclusion of sentencing with respect to a conflict with his counsel.*

Sullivan's first contention of error consists of the claim that the district court erred by neglecting to inquire further when, after sentencing was largely concluded, he expressed dissatisfaction with what he claimed was his counsel's failure to inform him of the lengthy sentence he faced upon conviction for the charged offenses. The State counters that Sullivan failed to preserve this claim in the district court, so it is not properly before us for review. But, to the extent that procedural bar can be cleared, we should confine our analysis to the threshold question of the district court's duty to inquire into Sullivan's complaint.

*Standard of Review*

Sullivan had a right to effective assistance of counsel during all critical stages of his criminal proceedings under the Sixth Amendment to the United States Constitution. This is accompanied by "a correlative right to representation that is unimpaired by conflicts of interest or divided loyalties." *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). The district court bears the responsibility to ensure this right is honored,

so when a defendant articulates dissatisfaction with his or her attorney, the district court generally has an obligation to inquire further. 302 Kan. at 760.

Whether the district court adequately discharged its duty is reviewed for an abuse of discretion. *Pfannenstiel*, 302 Kan. at 760-61. Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, i.e., no reasonable person would take the view adopted by the trial court; (2) based on an error of law, i.e., the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, i.e., substantial competent evidence does not support a factual finding on which the exercise of discretion is based. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013). The defendant bears the burden of showing the court abused its discretion. 298 Kan. at 370.

The duty of inquiry may lead a district court to abuse its discretion in three ways: (1) When the district court becomes aware of a potential conflict of interest but fails to inquire at all, it sidesteps its obligation to fulfill a legal duty which constitutes a decision based on an error of law; (2) when the court is aware of the conflict and proceeds with an investigation, but fails to conduct an appropriate inquiry; and (3) when the court, after learning of the conflict, conducts an appropriate inquiry but commits an abuse of discretion through its ultimate decision concerning whether to appoint substitute counsel. *Pfannenstiel*, 302 Kan. at 760-62.

*Preservation*

Generally, constitutional issues not raised before the district court cannot be raised on appeal. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018) (citing *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 [2015]). There are several exceptions to this rule, including:  (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) resolution of the question is necessary to serve the ends of justice or to prevent denial of fundamental

5

rights; and (3) the district court was right for the wrong reason. *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

Kansas Supreme Court Rule 6.02(a)(5) (2023 Kan. S. Ct. R. at 36) requires an appellant to explain why an issue that was not raised below should be considered for the first time on appeal. *Johnson*, 309 Kan. at 995. Sullivan asserts that his constitutional claim meets the first two exceptions for considering a new issue on appeal. But even if the exceptions apply, our decision to address the issue remains a prudential one. See *State v. Genson*, 316 Kan. 130, 135-36, 513 P.3d 1192 (2022) (finding that appellate court can exercise its discretion to consider whether to apply a prudential exception to the general rule that issues not raised before the district court cannot be raised for the first time on appeal). This claim involves a pure question of law, and the record reflects that Sullivan voiced dissatisfaction and the district court did not inquire but directed him to explore the postconviction options available to him through which the issue could be addressed. Since these are the only facts required for a determination of the threshold issue before us, we are persuaded that the first exception is applicable here and will exercise our discretion to analyze the question.

*District Court's Duty to Inquire*

When a defendant alleges deficiencies in defense counsel's performance, a district court must inquire further into the alleged conflict. *State v. Prado*, 299 Kan. 1251, 1258, 329 P.3d 473(2014). For a required inquiry to be satisfactory, the district court must investigate: (1) the basis for the defendant's dissatisfaction with counsel, and (2) the facts necessary to determine whether that dissatisfaction warrants new counsel. *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019). A single open-ended question by the trial court may suffice if its effect is to afford the defendant a chance to explain their perceived conflict of interest, irreconcilable disagreement, or inability to communicate with counsel. 310 Kan. at 554. A district court's failure to inquire after learning of a

6

potential attorney-client conflict may amount to an abuse of discretion. *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307 (2006).

To recap, the record before us reflects that early in the sentencing proceeding, Sullivan assured the court he was satisfied with retained counsel's representation and had the opportunity to review the presentence investigation report.

> "THE COURT: Okay. Mr. Anderson has been representing you. Have you been satisfied with his representation of you?
> "MR. SULLIVAN: Yeah.
> "THE COURT: Would you like for him to continue to represent you?
> "MR. SULLIVAN: Yeah.
> "THE COURT: On both of these cases, just to be clear?
> (Mr. Sullivan nodded.)
> "THE COURT: Answer out loud for me.
> "MR. SULLIVAN: Yes.
> "THE COURT: Okay. Thank you. All right. Have you had an opportunity to look at the presentence investigation in—talking on the 19 CR 471 case?
> "MR. SULLIVAN: Yeah."

Shortly thereafter, the court afforded Sullivan's attorney the opportunity to present arguments in support of his request for a dispositional departure. Counsel fully embraced the opportunity and spent a considerable period of time addressing Sullivan's criminal history, a conversation he shared with Sullivan concerning that history, the advanced age of his prior convictions, and in what ways that history accurately conveyed the nature of Sullivan's conduct and character, as well as its potential to be misapprehended. Counsel concluded by summarizing why Sullivan was a good candidate for the more lenient disposition. The State then presented counterarguments in opposition to Sullivan's departure request. Once both parties sufficiently offered their points of view, the court inquired of Sullivan:

7

"THE COURT:  Okay. Thank you. Mr. Sullivan, is there anything that you would like to tell me before I sentence you?"

"MR. SULLIVAN:  No."

The court worked its way through the various steps required to impose a sentence and reiterated the applicable sentencing range Sullivan faced for the first offense. The judge stated his intention to impose the mitigated sentence in the grid box and provided Sullivan with a lengthy explanation as to why he intended to deny the departure request. The court then advised the parties of the jail credit Sullivan was entitled to receive in connection with that case. Through it all Sullivan stood silent.

The court then moved on to impose sentence in Sullivan's second case. It announced the criminal history score again and after receiving clarification, Sullivan assured the court he had no objections to the calculation. After the parties offered their respective sentencing recommendations, the court again inquired of Sullivan:

"THE COURT:  Okay. All right. Mr. Sullivan, anything that you would like to tell me then before I sentence you on this case?"

"MR. SULLIVAN:  No."

"THE COURT:  Anything else then before I move forward with sentencing?"

"MR. ANDERSON:  No, Your Honor."

"MR. MORRIS:  No."

The court proceeded on, imposed the mitigated term for the remaining offenses, and determined whether the sentences imposed would be served concurrently or consecutively. It was only in that moment that Sullivan spoke up and expressed that he "probably need[ed] to get another lawyer or something" because counsel allegedly failed to "[tell him he would] get that much time if [he lost] a jury trial." That is, it was not until after Sullivan already asserted that he was satisfied with counsel's representation and wanted him to remain on as his attorney for sentencing, assured the judge there were no concerns he wanted to bring to the court's attention, and sentences were imposed from the

8

bench, that Sullivan voiced any concern with respect to counsel's representation. The court advised Sullivan that given the fact his sentences were already imposed; his recourse was to explore avenues of postconviction relief and "make whatever motion [he] want[ed] to" once the court wrapped up the hearing.

Sullivan now asserts the court erred in failing to delve into his concerns regarding his attorney in that moment and directs our attention to *State v. Prado*, 299 Kan. 1251, as a proposed model for resolution of this issue and support for his claim that the district court's failure to inquire into his complaint constitutes an abuse of discretion that demands reversal. But Sullivan's case is readily distinguishable from *Prado*. In that case, Prado orally moved to withdraw his plea at the outset of his sentencing proceeding due to his dissatisfaction with counsel and confusion about the plea agreement he entered into. Prado's counsel interjected with a two-fold purpose, to attempt to explain Prado's concerns about his representation and to assure the court that he adequately explained the terms of the agreement to Prado. The district court sidestepped its obligation to inquire into Prado's concerns and moved straight to the merits of his motion to withdraw plea. It ultimately concluded Prado failed to establish the good cause required to grant him the relief he requested.

On appeal, the Kansas Supreme Court agreed that the statements from Prado and his counsel were sufficient to put the district court on notice that a potential conflict existed. Thus, the district court abused its discretion in failing to inquire into that matter and ensure Prado's right to conflict-free counsel for the hearing on his motion to withdraw plea was protected. In arriving at its conclusion, the Court observed that ordinarily when such a finding is made, the next step is to remand the case back to the district court for a determination of whether the defendant can establish that the conflict adversely affected his attorney's performance. But the *Prado* court found that step was unnecessary in his case because the record alone demonstrated the existence of an actual conflict and that it was one which necessarily adversely affected counsel's performance.

9

That is, prejudice was presumed. *Prado*, 299 Kan. at 1260 (citing *State v. Sharkey*, 299 Kan. 87, 101, 322 P.3d 325 [2014]) (presuming prejudice when defendant was constructively denied his right to counsel because of a conflict).

Despite Sullivan's contentions to the contrary, his case is not on equal footing with *Prado*, where the conflict had a demonstrable effect on counsel's ability to represent Prado's interests at the exact critical stage, the motion to withdraw plea hearing, that was in controversy. By contrast, in Sullivan's case, the record does not establish that Sullivan's tersely expressed desire for new counsel caused any conflict bearing directly on Anderson's ability to represent him during sentencing because he waited until that hearing was concluded to voice any concern or disapproval. That is, unlike *Prado*, the district court gave Sullivan the chance to voice any concerns at various different times during the proceeding, but Sullivan actively declined to capitalize upon those opportunities.

The State counters that the district court had no duty to inquire because by the time Sullivan expressed any dissatisfaction with counsel's representation the proceeding was essentially concluded, and Sullivan's sentence was final. We agree. The sentence imposed became effective upon its pronouncement and the district court lacked jurisdiction to reopen it for modification. See *State v. McKnight*, 292 Kan. 776, 779, 257 P.3d 339 (2011). Although technically illegal, as will be discussed below, Sullivan's sentence was final when pronounced, thus, at that point Sullivan was required to file an appeal or postconviction motion to challenge the legality of the sentence. Illegal sentences are those sentences that (1) are imposed by a court without jurisdiction; (2) do not conform to the applicable statutory provisions, either in character or the term of punishment; or (3) are ambiguous about the time and manner in which they are to be served. K.S.A. 2022 Supp. 22-3504(a), (c)(1); *State v. Mitchell*, 315 Kan. 156, 158, 505 P.3d 739 (2022).

It is important to note that our decision here today does not strip Sullivan of all avenues for relief. As the district court noted, Sullivan remains free to pursue any complaints concerning counsel's representation through a postconviction remedy, namely at this juncture a K.S.A. 60-1507 motion. But, in so doing, he must be prepared to satisfy the two-part test from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, he must demonstrate that his attorney's performance was deficient, which requires him to show that counsel made errors so serious that he neglected to function in the capacity Sullivan was entitled to by the Sixth Amendment. 466 U.S. at 687. Next, Sullivan will need to demonstrate that the errors he complains of were so significant that they actually resulted in prejudice to him. Stated another way, he has the burden to establish that there is a reasonable probability his case would have yielded a different outcome had counsel's errors not occurred. 466 U.S. at 694. We recognize that Sullivan's attorney was retained and one of his own choosing rather than appointed, but defendants who retain their own counsel are entitled to no less protection under the Sixth Amendment than those for whom the State appoints counsel. See *Cuyler v. Sullivan*, 446 U.S. 335, 344-45, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980):

> "A proper respect for the Sixth Amendment disarms petitioner's contention that defendants who retain their own lawyers are entitled to less protection than defendants for whom the State appoints counsel. We may assume with confidence that most counsel, whether retained or appointed, will protect the rights of an accused. But experience teaches that, in some cases, retained counsel will not provide adequate representation. The vital guarantee of the Sixth Amendment would stand for little if the often uninformed decision to retain a particular lawyer could reduce or forfeit the defendant's entitlement to constitutional protection. Since the State's conduct of a criminal trial itself implicates the State in the defendant's conviction, we see no basis for drawing a distinction between retained and appointed counsel that would deny equal justice to defendants who must choose their own lawyers."

The district court judge here fulfilled his obligation to ensure that Sullivan's rights were protected throughout sentencing and that he received every opportunity to make his

11

questions and concerns known. Sullivan repeatedly assured the court that everything was satisfactory, and sentencing could move forward without cause for concern, only to reverse course at the very end with the pronouncement that his feelings toward counsel and the matters addressed were precisely the opposite of what he had previously stated. This is not the procedure contemplated by the avenue of relief Sullivan endeavors to travel. If litigants believe a conflict with their counsel exists, they have an obligation to notify the court at the earliest opportunity so that a proper inquiry can be made before the conflict can poison the proceeding at issue. They may not lead the district court down the primrose path with their declarations of satisfaction only to later claim, after the point in time when any corrective measures can be taken has passed, that the court abused its discretion when it relied on their repeated assurances. We decline to find the district court abused its discretion when it directed Sullivan to explore postconviction options rather than inquire into his alleged dissatisfaction with his attorney.

*The district court erred in applying Sullivan's full criminal history score to the primary offenses in both of his consolidated cases.*

Sullivan next argues that the district court erred when it assigned a criminal history score of C to the primary charges in both of his cases. According to Sullivan, given that the cases were consolidated, that criminal history score could only be assigned to the primary charge in his 2019 case, and all the charges in his 2020 case were limited to criminal history scores of I. The State concedes that the district court erred on this issue.

*Preservation and Standard of Review*

While Sullivan did not raise this issue below, an illegal sentence can be corrected at any time while the defendant is serving the sentence. K.S.A. 2022 Supp. 22-3504(a). A sentence is illegal when it does not conform with statutory provisions, either in the character or the term of the authorized punishment. *State v. Neal*, 292 Kan. 625, 630, 258

P.3d 365 (2011). We exercise unlimited review when determining whether a sentence is illegal. 292 Kan. at 630.

*Base-Sentence Rule*

Under the revised Kansas Sentencing Guidelines Act, a district court must establish a "base sentence" for the crime with the highest severity level, known as the primary crime. K.S.A. 2022 Supp. 21-6819(b)(2). The base sentence is calculated by applying the defendant's criminal-history score to the primary crime. K.S.A. 2022 Supp. 21-6819(b)(3). Sentences for the remaining convictions are calculated using a criminal history score of I. K.S.A. 2022 Supp. 21-6819(b)(5). While appearing simple on paper, the proper application of the base-sentence rule to consolidated cases has eluded many district courts, which has prompted clarification from the appellate courts. See *State v. Dixon*, 60 Kan. App. 2d 100, Syl. ¶ 11, 429 P.3d 455 (2021) (application of "double rule," prohibiting multiple-charge convictions from exceeding twice the base sentence, violated defendant's equal-protection rights where his two cases were consolidated for trial, but he was sentenced separately in each case); *State v. Anderson*, No. 124,727, 2023 WL 176658, at *6 (Kan. App. 2023) (unpublished opinion) (application of "base-sentence" rule separately to each of defendant's three consolidated cases violated his equal-protection rights); *State v. Fitzgerald*, No. 123,121, 2022 WL 815839, at *5 (Kan. App. 2022) (unpublished opinion) (extending *Dixon* holding to defendants who accept plea deals).

Sullivan's case is analogous to *State v. Myers*, 62 Kan. App. 2d 149, 509 P.3d 563 (2022). There, the State charged Myers with multiple counts in two separate cases that were consolidated for trial. The district court sentenced Myers separately in each case and applied his full criminal history for the primary offense in each. On appeal, this court found that the base-sentence rule, as applied to Myers, violated his equal-protection rights. As a remedy, Myers' sentences were vacated, and his case was remanded for

13

resentencing with directions to designate one primary crime of conviction and a single base sentence for both cases. 62 Kan. App. 2d at 192-93.

The record reflects that the same error was committed in Sullivan's case when the district court applied Sullivan's full criminal history score of C to the primary offenses in both his 2019 and 2020 cases. The only offense that can properly receive that score is the primary offense from his 2019 case, and all remaining convictions must be assigned a criminal history score of I. Accordingly, Sullivan's sentence must be vacated, and his case remanded so that he might be sentenced anew, utilizing the appropriate criminal history score for each offense. Additionally, Sullivan should have the benefit of conflict-free counsel at resentencing.

Sentence vacated and case remanded with directions.

\* \* \*

PICKERING, J., dissenting:  I respectfully dissent because a defendant's right to counsel at a sentencing hearing does not end once the district court orders the defendant to prison. A defendant has a fundamental right to conflict-free counsel throughout the entire adversarial proceeding. The Sixth Amendment to the United States Constitution imposes a duty on the district court to inquire when a defendant expresses dissatisfaction with his or her attorney. This constitutional right should be honored and upheld.

As the King of Hearts in *Alice's Adventures in Wonderland* advised*:* "'Begin at the beginning,' the King said, very gravely, 'and go on till you come to the end: then stop.'" Carroll, Alice's Adventures in Wonderland, p. 60 (Random House, 1955) (1865). I will endeavor to do the same. In 2019 and 2020, Dustin Stoughton Sullivan was charged with two criminal cases. In the first case, 2019-CR-471, Sullivan was ultimately charged with distributing methamphetamine (between 3.5-100 grams), a level 2 drug felony. In the

14

second case, 2020-CR-123, he was charged with two felonies: distributing methamphetamine (between 1-3.5 grams), a level 3 drug felony, and possession of a controlled substance without a tax stamp, a level 10 nonperson felony.

At a later pretrial hearing, when asked by the district court regarding his counsel's representation, Sullivan advised the court that he was satisfied with his counsel. During the time leading up to the trial, Sullivan and the State entered into plea negotiations, but no plea agreement was reached. Sullivan was later tried and convicted in both cases on all counts.

In the beginning of Sullivan's sentencing hearing, in response to the district court's question about his counsel, again Sullivan did not state he had any concerns. It was only after the court imposed a controlling prison sentence of 117 months that Sullivan voiced his "need to get another lawyer." It is important that we do not overlook the court's response to Sullivan's expressed need for a new attorney:

> "THE COURT: Yes. I may have just unnecessarily complicated things. I just wanted to make sure, yes, both these sentences are going to run concurrent with each other. So I don't think it makes any difference as far as the post-release.
> "MR. SULLIVAN: I probably need to get another lawyer or something. I think I need to get another lawyer. He never told me I'd get that much time if I lose a jury trial. Someone—I need to get another lawyer. I'm not—I don't care about the—he didn't do good, I don't think. He didn't tell me what the full sentence would be. Ten years and stuff like that for losing a jury trial? I never knew nothing about that.
> "THE COURT: Well, I've already pronounced sentence. So at this point there's just a few things that need to be wrapped up. But you're free to make whatever motion that you want to once I finish with your sentence. But I've already pronounced the sentence, so that's not going to change at this point.
> "MR. SULLIVAN: So I got to appeal it or something?
> "THE COURT: Correct. Yes."

15

Sullivan had clearly expressed dissatisfaction with his attorney for apparently failing to advise him of the potential sentences he could face after losing a jury trial. The district court did not stop to inquire further but, rather, continued making additional rulings, including:

(1)    remanding Sullivan to the custody of the department of corrections;

(2)    ruling on Sullivan's jail credit;

(3)    ordering Sullivan to pay court costs;

(4)    discussing whether Sullivan should pay the DNA database fee of $200;

(5)    advising Sullivan of his duty to register;

(6)    ordering Sullivan not to carry a firearm or a dangerous weapon;

(7)    advising Sullivan that he could not vote;

(8)    denying Sullivan's motion for an appeal bond; and

(9)    improperly notifying Sullivan of his statutory right to appeal.

When the court only advised Sullivan of his right to appeal his sentences, Sullivan expressed not understanding how his sentence went from 2 years with community corrections to 10 years in prison:

"THE COURT:  . . .I will also let you know that you do have the right to appeal my sentences today on both of these convictions. If you choose to do so, you must do so within 14 days of today, and you may be entitled to a court-appointed attorney for that—for those appeals. Do you understand [that], sir?

"MR. SULLIVAN:  Yeah. I don't understand how it goes from two years of corrections to ten years in prison; went from the plea bargain—I mean, that's what I don't understand.

"THE COURT:  Okay. So my question to you is do you understand you have a right to appeal?

"MR. SULLIVAN:  Oh, yeah. Yeah."

16

Again, the district court did not stop to inquire—even though when Sullivan first told the court he needed a new attorney, he stated that the attorney did not tell him what the "full sentence" would be: "Ten years and stuff like that for losing a jury trial? I never knew nothing about that." Without any inquiry by the court into Sullivan's belief that he needed a new attorney, the record remains unclear regarding the conflict between Sullivan and his attorney, including what Sullivan's attorney previously advised him during plea negotiations and the trial.

*The pronouncement of a defendant's sentence does not extinguish the right to conflict-free counsel.*

The majority ruling that the district court has no duty to inquire after the incarceration phase essentially bifurcates a defendant's right to counsel at sentencing. In other words, the court has a duty to inquire regarding an attorney-client conflict before the incarceration phase of sentencing, but the court has no duty to inquire after the incarceration phase of sentencing. The court, however, must maintain its responsibility to ensure the defendant's constitutional right to conflict-free counsel. I cannot agree with a ruling that one portion of the sentencing hearing is important, and the other portion of the sentencing hearing is not important. It is all important.

The majority ruling is, of course, contrary to the Sixth Amendment, which guarantees a defendant the right to effective assistance of counsel. The right to counsel includes the right to representation free from conflicts of interest. *State v. Stovall*, 298 Kan. 362, 370, 312 P.3d 1271 (2013).

We must remember that the pronouncement of a sentence does not extinguish the right to effective assistance of counsel. Rather, the right to effective assistance of counsel applies during all critical stages of a criminal proceeding. *State v. Pfannenstiel*, 302 Kan. 747, 758, 357 P.3d 877 (2015). It first attaches when judicial proceedings are initiated

17

against the defendant and extends to the first appeal of right. *State v. Sharkey*, 299 Kan. 87, 93, 322 P.3d 325 (2014). Sullivan raised a potential attorney-client conflict at a postconviction hearing where the State was represented by counsel and before filing his direct appeal. Therefore, his right to effective assistance of counsel remained in effect, and the district court retained its duty to inquire into the potential conflict.

Not fulfilling the district court's duty to inquire once the court becomes aware of a possible conflict of interest opens the probability that the defendant is effectively without legal representation for the remaining portion of the sentencing hearing. See *Sharkey*, 299 Kan. at 101 (finding at hearing on defendant's pro se posttrial motions that asserted attorney was ineffective due to conflict of interest, defendant "effectively had no legal representation at the motions hearing" when defendant argued counsel was ineffective). Failure to inquire creates a constitutional peril that could leave defendants like Sullivan without legal representation for the remainder of the sentencing hearing.

*Liberty interests are at stake throughout a defendant's sentencing hearing.*

Besides the incarceration phase, a defendant has additional liberty interests that are at stake throughout the sentencing hearing. The district court, however, effectively told Sullivan that he did not need an attorney after the court had imposed its sentence:

> "THE COURT: Well, I've already pronounced sentence. So at this point there's just a few things that need to be wrapped up. But you're free to make whatever motion that you want to once I finish with your sentence. But I've already pronounced the sentence, so that's not going to change at this point."

The right to counsel exists at sentencing even if the defendant's sentence would not have changed with the presence of an attorney. In *Townsend v. Burke*, 334 U.S. 736, 740-41, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948), the United States Supreme Court held that the defendant without counsel at a sentencing coupled with "assumptions concerning his

18

criminal record which were materially untrue" had been deprived of due process. Notably, Justice Jackson stated: "In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner." 334 U.S. at 741; see also *Gardner v. Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977) ("Even though the defendant has no substantive right to a particular sentence within the range authorized by statute, the sentencing is a critical stage of the criminal proceeding at which he is entitled to the effective assistance of counsel.").

"As explained in *Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932), the purpose of the Sixth Amendment right to counsel is to protect the rights of laymen, who are assumed to be unfamiliar with the intricacies of legal proceedings, by providing them with assistance of counsel." *State v. Bristor*, 236 Kan. 313, 317, 691 P.2d 1 (1984). The Constitution, as the *Powell* Court states, gives the defendant the right to "the guiding hand of counsel at every step in the proceedings against him." 287 U.S. at 69. Due to these "intricacies of legal proceedings," defendants should have "the guiding hand" of counsel even after the court has imposed the incarceration sentence. See 287 U.S. at 69; *Bristor*, 236 Kan. at 317.

Defendants may have other liberty interests that are considered and ruled on after the incarceration phase of sentencing, liberty interests that are protected by the Due Process Clause. See *Sandin v. Conner*, 515 U.S. 472, 483-84, 115 S. Ct. 2293, 132 L. Ed 2d 418 (1995). These liberty interests include but are not limited to jail time credit; an appeal bond; request to be released from custody while awaiting start of treatment; request to attend drug treatment; contact orders, e.g., lifting restrictions on contact with a victim, family, etc. Should the defendant be placed on probation, the district court imposes specific probation restrictions. See K.S.A. 2022 Supp. 21-6607(b), (c).

19

What occurred here is an excellent example of the need for conflict-free counsel. In this case, the district court ruled on Sullivan's jail credit. Calculating jail credit is part of the sentence imposed on a defendant. K.S.A. 2022 Supp. 21-6615(a); *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845, 849 (2023). The district court also denied Sullivan's motion for an appeal bond, another ruling that affects Sullivan's liberty interest.

Additionally, the district court improperly advising Sullivan that he just had a right to appeal the sentence again illustrates the need for counsel throughout a sentencing hearing. See *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982) (finding defendant may file late appeal if defendant not informed of right to appeal, was not furnished with attorney to perfect appeal, or was furnished with attorney who failed to perfect appeal). Sullivan was convicted in a jury trial, and thus he would have the statutory right to appeal both his convictions and sentence. See 2022 Supp. K.S.A. 22-3601(a) ("Any appeal permitted to be taken from a district court's final judgment in a criminal case shall be taken to the court of appeals[.]"). A defense counsel would be able to correctly advise a defendant of his or her full appellate rights, including the right to appeal a conviction. Conflict-free counsel could also make any corrections on the record at the hearing, which would ensure the defendant is fully aware of his or her appellate rights.

In cases involving indigent defendants, a defense counsel would ensure that the district court follows *State v. Robinson*, 281 Kan. 538, 546-47, 132 P.3d 934 (2006). That is, when the court assesses the defendant's duty to reimburse the Board of Indigents' Defense Services for attorney fees, a defense counsel would advocate for the defendant's inability to pay the fees and ask the court to consider the defendant's lack of financial resources in making its ruling.

Another possible ruling made after the incarceration phase of the sentencing hearing is restitution. See K.S.A. 2022 Supp. 21-6604(b)(1). A district court may decide

not to rule on restitution until after the incarceration phase is completed to consider if the restitution is workable. K.S.A. 21-6604(b)(1); see *State v. Meeks*, 307 Kan. 813, 815, 415 P.3d 400 (2018). As our Supreme Court has clearly stated: "[R]estitution constitutes a part of a [criminal] defendant's sentence . . . . Until any applicable restitution amount is decided, a defendant's sentencing is not complete." *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014). The restitution phase of sentencing must be completed before the defendant can file a notice of appeal. 298 Kan. at 988.

*The district court has a duty to inquire.*

"Our state and federal constitutions guarantee a criminal defendant the right to effective assistance of counsel, and a district court's duty to inquire into a potential conflict with counsel derives from this right." *State v. Bacon*, 309 Kan. 1235, 1238, 443 P.3d 1049 (2019). "'Where a trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further.'" *State v. Vann*, 280 Kan. 782, 789, 127 P.3d 307 (2006). "An articulated statement of attorney dissatisfaction triggers the district court's duty to inquire." *State v. Toothman*, 310 Kan. 542, 554, 448 P.3d 1039 (2019).

When a defendant alleges deficiencies in defense counsel's performance, a district court must inquire further into the alleged conflict. An appropriate inquiry requires the district court to investigate "'(1) the basis for the defendant's dissatisfaction with counsel'" and (2) the facts necessary to determine whether that dissatisfaction warrants new counsel. 310 Kan. at 554. "'A single, open-ended question by the trial court may suffice'" if the defendant has a chance "'to explain a conflict of interest, an irreconcilable disagreement, or an inability to communicate with counsel.'" 310 Kan. at 554. A district court's failure to inquire after learning of a potential attorney-client conflict is an abuse of discretion. *Vann*, 280 Kan. at 789.

21

*A district court should not relinquish its duty to inquire into a potential attorney-client conflict.*

In *State v. Brown*, 300 Kan. 565, 331 P.3d 797 (2014), the Kansas Supreme Court considered whether a district court abused its discretion when it failed to inquire further into a potential attorney-client conflict. There, the defendant, Brown, had filed a pro se motion requesting the court to appoint new counsel, and a hearing was set. But for reasons unclear from the record, the motion was later withdrawn, and no hearing took place. At the sentencing hearing, with a different presiding judge, Brown explained to the district court that he had earlier filed a motion for new counsel but later learned that the court had withdrawn his motion. Now aware of Brown's potential conflict with his counsel, the court did not attempt to inquire into the potential attorney-client conflict. The district court would not let Brown speak any further, and, instead, the court spoke of the defense counsel's abilities. The court also told Brown that he could "file a motion, an action alleging ineffective assistance of counsel after your appeals are exhausted." 300 Kan. at 574. The Kansas Supreme Court ruled that the district court's failure to perform its duty to inquire further was an abuse of discretion. 300 Kan. at 578. A district court's duty to inquire into a potential attorney-client conflict "accrues when the court first learns of the potential conflict, and that duty does not decay or dissipate" through any inaction on the part of the defendant. 300 Kan. at 577.

Important to this case, the *Brown* ruling abrogated *State v. Boyd*, 27 Kan. App. 2d 956, 9 P.3d 1273 (2000). In that case, Boyd, the defendant, had filed a motion to dismiss his counsel, but his motion was never ruled upon by the district court. The *Boyd* panel found no error due to the defendant's later inactions:

"There is nothing in the record to indicate that Boyd ever objected to the appearance of his trial counsel. Boyd appeared with his attorney at the motions hearing, the jury trial,

the motion for new trial, and at sentencing. He had ample opportunity to object to the presence of his attorney." 27 Kan. App. 2d at 965.

The *Brown* court explained that the rationale in *Boyd* "does not comport with our current decisions" because a district court's duty to inquire regarding a potential attorney-client conflict "emanates from its responsibility to assure that a defendant's constitutional right to effective assistance of counsel is honored." *Brown*, 300 Kan. at 577.

Here, the district court was tasked with a responsibility to assure that Sullivan's constitutional right to conflict-free counsel was upheld. Sullivan's right to conflict-free counsel cannot be waived by his earlier statements to the court that—at that time—he was satisfied with this counsel. As *Brown* explains, Sullivan's earlier statements do not cause a district court's duty to inquire into a potential conflict to "decay or dissipate." 300 Kan. at 577. The court clearly heard Sullivan's statements about his need for new counsel but did not make any further inquiries. Instead, the court told Sullivan that he was "free to make whatever motion" he wanted once the court had finished with his sentence and he had a right to appeal. The district court should not have relinquished its duty to inquire into a potential attorney-client conflict.

*We should be guided by all of* State v. Prado*'s reasoning.*

In *State v. Prado*, 299 Kan. 1251, 329 P.3d 473 (2014), our Supreme Court considered whether a district court has a duty to inquire about the defendant's dissatisfaction with defense counsel. There, Prado pled guilty under a convoluted plea agreement. At sentencing, Prado made a pro se oral motion to withdraw his plea and spoke of his dissatisfaction with his defense counsel for failing to adequately explain the plea agreement. Defense counsel helped explain Prado's complaints about his representation but also went on to explicitly advocate against his client's position by arguing that he had adequately explained the plea agreement. The district court did not

23

inquire about the nature of the conflict between Prado and his attorney. Rather, the court immediately considered whether good cause existed for Prado to withdraw his plea. Finding no good cause to withdraw the plea, the district court denied Prado's motion and proceeded with sentencing.

On appeal, the *Prado* court held that Prado's pro se statements placed the district court on notice of the potential conflict and triggered the duty to further inquire. By skipping the inquiry step, the district court had abused its discretion by denying Prado the opportunity to have conflict-free counsel argue the plea withdrawal motion. The *Prado* court noted that, ordinarily, the remedy for this abuse of discretion was to remand to the district court for determination of whether Prado can establish that the conflict of interest adversely affected his counsel's performance. But since defense counsel explicitly argued against Prado's position, the record indicated an actual conflict. Accordingly, the Supreme Court reversed the denial of Prado's motion to withdraw his plea, vacated his sentence, and remanded to the district court to appoint conflict-free counsel to represent the defendant at a new hearing on his motion to withdraw his plea. 299 Kan. at 1260-61.

Like *Prado*, Sullivan expressed dissatisfaction with his defense counsel during the sentencing hearing. Sullivan's statements suggest that his counsel failed to advise him of the potential sentence he could receive if he was found guilty by a jury—but without any inquiry by the court, this remains uncertain. These statements put the district court on notice of the potential conflict and triggered the duty to inquire further. In fact, when the district court advised Sullivan of his appellate rights, Sullivan again expressed his confusion of how his sentence went from "two years of [community] corrections to ten years in prison." Sullivan's statements should have prompted the district court to make an inquiry.

Because the district court failed to inquire, it abused its discretion. But unlike in *Prado*, Sullivan's defense counsel did not argue against his client's position. In fact,

24

defense counsel remained silent both times that Sullivan spoke. Therefore, the record in Sullivan's case does not reveal an actual conflict of interest, although a potential one. Without an inquiry, the record is not sufficiently developed for us to conclude whether an actual conflict existed. A remand to the district court for further inquiry into the nature of the potential conflict is required.

I disagree with the majority and find that *Prado* controls. Even if *Prado* can be distinguished, Kansas caselaw demands that an inquiry is made. See *Pfannenstiel*, 302 Kan. at 758; *Brown*, 300 Kan. at 576; *Sharkey*, 299 Kan. at 93; *Stovall*, 298 Kan. at 370; *Vann*, 280 Kan. at 789. Sullivan's statements were made while the sentence hearing was ongoing. By distinguishing *Prado* and holding the court had no duty to inquire, the majority loses sight of the importance of conflict-free counsel throughout the entire sentencing hearing. That duty should remain intact.

*The importance of upholding constitutional rights*

Finally, I pause to express a serious concern. The majority's ruling gives the wrong impression that a district court's duty to inquire of an attorney-client conflict ends after the court rules on the defendant's incarceration—prison, probation, and postrelease supervision. Adopting such a mistaken view leads to an erroneous belief that the district court has no duty to inquire after the defendant is sentenced to prison or probation. Yet in accordance with the Sixth Amendment's right to counsel, the district court—which is entrusted with ensuring that a defendant's Sixth Amendment right to counsel is honored—has a duty to stop the proceedings and make the necessary inquiries.

Arguably, moments after hearing that they are about to serve years in prison, defendants like Sullivan are at their most vulnerable. Consequently, to uphold the virtues of our legal system, a defendant's Sixth Amendment right to an attorney should remain steadfast. This right to conflict-free counsel should be acknowledged, respected, and

25

upheld. This fundamental right must not be ignored or brushed away by telling the defendant he or she can later appeal the court's rulings. The integrity of our adversarial system of justice demands that we uphold the rights of its people at all critical stages.